IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HANI SALEH RASHID ABDULLAH, *et al.,* )
                                             )
        *Petitioners*,                  )
                                             )
*v.*                                           )
                                             )    No. 05-00023 (RWR)
GEORGE W. BUSH, *et al.,*          )
                                             )
       *Respondents*.               )

**MOTION TO COMPEL RESPONDENTS TO REPORT ON
THEIR COMPLIANCE WITH THE COURT'S
PRESERVATION ORDER OF JULY 18, 2005**

1.      On July 18, 2005, the Court ordered respondents to "preserve and maintain all evidence, documents and information, without limitation, now or ever in respondents' possession, custody or control, regarding the individual detained petitioners in these cases." (Item 30.) A copy of this Order was served upon CIA Director Goss and his General Counsel on July 22, 2005. The Central Intelligence Agency, *inter alia,* is bound by it. (*See* Exhibit A.)[1]

2.      Thereafter, in November 2005,[2] CIA officials, according to both *The New York Times* (Dec. 6, 2007) and the *Washington Post* (Dec. 7, 2007), destroyed at least two videotapes documenting the interrogation of two suspected Al Qaeda

---

[1] Counsel has advised respondents' counsel that this motion is being filed and that the undersigned assumes that respondents will oppose the motion.

[2] *The New York Times*, Dec. 9, 2007.

operatives in the agency's custody, including Abu Zubaydah and Abd al-Rahim al-Nashiri (Exhibits B, C). The Director of the CIA has admitted the destruction of these videotapes. Notably, this destruction took place after the Supreme Court had decided in *Rasul v. Bush* that Guantanamo prisoners could pursue habeas corpus actions, and after Congress began debate on the Detainee Treatment Act, which ultimately provided for judicial review of the government's determinations that Guantanamo prisoners, including Abdullah, were enemy combatants. That these tapes, and others like them, would be part of the record in such actions was both foreseeable and foreseen at the time of the destruction. Moreover, from press accounts, it is clear that the destruction was an intentional act, undertaken specifically to preclude court review of this evidence, including discovery of the government's criminal conduct.

3. Others arrested at the same time and place as petitioner Abdullah, and thus potential witnesses regarding him, are likely to have had their interrogations videotaped, as explained in ¶5 *infra*. Indeed, Abdullah, who was tortured at the notorious "Prison of Darkness," may have been filmed as well.

4. Given the Agency's recent admission of evidence destruction, it is thus likely that respondents have destroyed evidence relating to Abdullah and thus violated this Court's order.

5. According to *The New York Times*, "[a] review of records in military tribunals indicates that five lower-level detainees at Guantánamo were initially charged with offenses based on information that was provided by or related to Mr. Zubaydah." (Exhibit D.) The Agency's *modus operandi* regarding these two "high value" prisoners and those implicated by him is very likely also true of other such prisoners, including those who are likely to have been questioned concerning Abdullah. . See ¶3 *supra*.)

6. Inquiry into the scope of this likely spoliation of evidence should best come from the Court rather than from counsel seeking "assurances" from the very agency which has confessed to destruction of evidence. Indeed, the Department of Justice stubbornly resisted entry of this Court's July 18, 2005 order, urging the order to be unnecessary given the presumption of regularity of government conduct and other bland assurances that the respondents would behave. (Item 32.) Petitioner responded arguing that respondents had already exhibited their penchant for illegal behavior, including destruction of evidence, thereby nullifying any such "presumption." (Item 35.) Precisely because of prior misconduct, the order was entered and petitioner, out of an abundance of caution, served it on the very Agency that has now confessed to misdeeds, including filing *ex parte* perjured declarations regarding evidence before the *Moussoai* court. (*See* Letter of

October 25, 2005 from the Department of Justice to the Chief Judge of the Fourth Circuit and the trial judge, Leonie Brinkema, at 1, Exhibit. E.)

WHEREFORE, Petitioner Abdullah prays for an order (A) promptly scheduling a hearing to preliminarily inquire into the government's compliance with the Court's preservation order, and (B) directing respondents to make available at that hearing for questioning by the Court and counsel individuals from each agency who has personal knowledge of the handing of all evidence potentially subject to the Court's preservation order, subject to such security procedures as the Court may deem justified.

Respectfully submitted,

/s/   Stephen M. Truitt

Stephen M. Truitt (DC # 13235 )
600 Fourteenth Street, N.W., Suite 500
Washington, DC  20005-2004
Tel: (202) 220-1452
Fax: (202) 220-1665

Steve Kadidal (DC #454248)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Of Counsel for Petitioner*

Charles H. Carpenter (DC #432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC  20005-2004
Tel: (202) 220-1452
Fax: (202) 220-1665

Christopher J. Huber
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750

Dated:  December 10, 2007

*Counsel for Petitioner*