REDACTED

APPROVED FOR PUBLIC FILING

JANUARY 14, 2008

FILED WITH THE
RT SECURITY
12/31/07

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HANI SALEH RASHID ABDULLAH, )
  et al.,                    )
                             )
           Petitioners,      )
                             )
  v.                         )   No. 05-00023 (RWR)
                             )
GEORGE W. BUSH, et al.,      )
                             )
           Respondents.      )

**REPLY BRIEF IN SUPPORT OF
MOTION TO COMPEL RESPONDENTS TO REPORT ON
THEIR COMPLIANCE WITH THE COURT'S
PRESERVATION ORDER OF JULY 18, 2005**

Respondents do not traverse the principal bases for Abdullah's motion: that the evidence which they have so far admitted destroying, and possibly other evidence, related to Abdullah, was clearly within this Court's order. Instead Respondents coyly intimate that petitioner claims only that the tapes destroyed "might have had something to do with" petitioner rather than a sharper contention that they destroyed evidence that *does* so relate. But paragraph 3 of the motion squarely alleged that others arrested or sought in Pakistan at the same time as petitioner were "potential witnesses" and thus their interrogations were plainly pertinent to petitioner's CSRT. No one denies this and in this motion it must be taken as true. Moreover, it is in fact true.

1. Abu Zubaydah was arrested in March of 2002 in Pakistan. The government (including, in September 2006, the President) has claimed that his interrogation led to the raids which were aimed at capturing certain high level Al Qaeda members (including Ramzi bin al-Shibh and Khaled Sheikh Mohammed) on September 11, 2002.[1] In the course of these raids, Pakistani authorities swept up petitioner, a non-combatant in the firefight. It is very likely that Abu Zubaydah, and those captured on September 11, 2002, were asked directly about Abdullah, because of the time and place of his arrest, in addition to being questioned about other details covered by this Court's order.

At his CSRT Abdullah called a particular alleged Al Qaeda officer ("X")[2] as a witness and the tribunal concluded "the witness to be relevant" but that he "could not be found." (Unclassified Record, Memorandum of 22 Jan 05 from Asst. Legal Advisor to Director Combatant Status Review Tribunal.)

2. 

Moreover the same pretexts[3] proffered for the tape destruction -- protection of "interrogators" and their families from the vengeance that would be engendered by those viewing the tapes – applies fully to the record of evidence from X. The only reasonable view is that these tapes too have been destroyed and that they were also covered by this Court's order. Whether viewed as the destruction of the tapes of Abu Zubaydah or of X or both, judicial inquiry into Respondents' obedience to this Court's order is proper here. The matter can no longer be swept under the rug, however well intentioned the "investigations" by the Department of Justice may be.

       3. To avoid court inquiry into the Unites States' compliance with the July 18, 2005 order – which is all as an initial matter petitioner seeks[4] – Respondents offer a procedural gambit urging that *Hamdi v. Rumsfeld* holds that foreigners detained under the laws of war enjoy some lesser suite of due process rights than others. Even if this were a proper application of *Hamdi*, and it is not,

---

[3] Abdullah believes that the real reasons the tapes were destroyed is to conceal evidence of criminal behavior on the part of government employees (and their superiors) and to conceal exculpatory evidence.

[4] Petitioner does not seek a full blown evidentiary hearing in the first instance, but rather a compliance report from a knowledgeable, competent federal officer as to whether the Agency has, or has not complied with the court's order and what steps it took to comply with it after July 22, 2005 when the order was mailed to them.

this proposition is utterly irrelevant to this motion. Nothing in *Hamdi* absolves *Respondents* from complying with proper orders of a United States District Court.[5]

4. Respondents note that more than two years *after* a copy of this Court's Order was served upon his predecessor, the Director of the Central Intelligence Agency has ordered that evidence be preserved. While this might seem to obviate concern about destruction of evidence going forward, it is a clear admission that there was no attempt to comply with this court's earlier order. Indeed, the one point this directive shows beyond peradventure is that the CIA did not do what it could and should have done upon receipt of the Court's order.

5. Respondents announce that the Department of Justice is conducting its own investigation.[6] The genesis of this "investigation" is instructive as to why it should not prevent this court from inquiring into a violation of its own order. The Department had filed, not one, but two, perjured declarations on May 9, 2003 (before Judge Brinkman) and November 14, 2003 (before the Fourth Circuit) in the Moussaiou trial and appeal. The declarations were a blunt obstruction of

---

[5] Respondents refer to a dispute concerning the Court's jurisdiction over this case. They do not and cannot contend that the Court lacked jurisdiction at the time it entered the July 18, 2005 Order, nor do they contend that the Court lacks authority to enforce its own orders while this jurisdictional dispute is pending.

[6] Respondents also suggest that this Court should not interfere with matters pending before other district judges. Abdullah notes that the Order entered by the Court is materially different from those entered by Judges Kessler and Kennedy, and so some of the issues to be resolved by those judges are not relevant here. In any event, the fact that similar motions are before other judges means only that some consultation might be appropriate, but certainly does not indicate that this Court should either defer to those judges, or, as respondents evidently prefer, do nothing.

justice asserting that the CIA had no recording of certain interrogations. In fact the agency did have such tapes at the time of the submission of the declarations. When the "error" was discovered some two years later, the Department, like any other lawyer seeking to avoid entanglement in an obstruction of justice by his client, filed the "Top Secret" letter with the relevant courts, perhaps hoping that the designation might delay the inevitable disclosure.[7] Thereafter came the revelations of document destruction and investigations and after-the-fact curative actions, such as the Director's order. Were it not for the fact that the Department was deeply implicated in obstructing justice and forced to take corrective action no one would know about the tape destruction to this very day.[8]

     5. The Department's actions, then, seem to be no more than what the Court might expect any counsel to do when it is discovered that the client has been tampering with evidence. Of course it is appropriate that DOJ ascertain what the facts are; it is going to be representing Respondents in this case (including with respect to the report Abdullah believes the Court should order), it will be representing any witnesses called to testify, and it will be advising its clients all along about their legal obligations. That it apparently and somewhat spectacularly

---

[7] A redacted version of the letter was attached to the motion as Exhibit E.

[8] As far as Abdullah is aware the government has so far only admitted to the destruction of evidence related to the Moussauoi case – as noted above. The logic of taping interrogations, and of destroying tapes, applies equally to other high value detainees.

failed to do so in the past – news accounts quote CIA officials involved in the destruction of documents claiming that despite repeated requests, *no one* told them not to do so – does not alter counsel's obligation to ascertain the true facts. A litigant's self-investigation, though, cannot substitute for the judicial inquiry that is necessary to protect the integrity of the legal process here.

6. The government's request for forbearance based on its claim to be investigating might be worthy of greater consideration if (a) the government had not already spent over three years pursuing a policy of delay[9] – little short of massive resistance to the ruling in *Rasul* – while each new day of legally unjustified imprisonment of Abdullah is a new injury; (b) the government had referred the investigation to an independent counsel; (c) the government had given a reasonable, and reasonably short timetable for its investigation; (d) the government was not already telegraphing that it believes it has some sort of national security interest that allows it to violate court orders; and, most importantly, (e) the government could make even the smallest showing of a good faith attempt to comply with the Court's order in the first place. Instead, it offers only vacuous generalities, the lightest of commitments, and weakest of promises.

---

[9] This strategy of delay is not restricted to *habeas* actions before the district courts, but is in full application in the Court of Appeals, where despite an admonition from two justices of the Supreme Court, *Boumediene v Bush*, 127 S. Ct. 1478 (2007), the government continues to resist production of the full record in cases, including Abdullah's, under the Detainee Treatment Act. *See Abdullah v. Gates*, No. 07-1234 (D.C. Cir.) docket entries of September 27, 2007 and October 15, 2007.

The substance of the government initiative is so slight, Abdullah suspects that the government investigation, as currently described, is a public relations step little removed from O.J. Simpson's search for the "real killer" of his ex-wife.

Even so, Abdullah is confident that the Court can find a way to proceed that does not compromise, unreasonably, the government lightly-professed desire to prosecute, eventually, wrongdoers, while also fully vindicating Abdullah's interest in having a fair trial of his civil action.

Respectfully submitted,

/s/   Charles H. Carpenter

| | |
|---|---|
| Shane Kadidal (DC #454248) | Charles H. Carpenter (DC #432004) |
| CENTER FOR CONSTITUTIONAL RIGHTS | PEPPER HAMILTON LLP |
| 666 Broadway, 7th Floor | 600 Fourteenth Street, N.W., Suite 500 |
| New York, New York 10012 | Washington, DC 20005-2004 |
| Tel: (212) 614-6439 | Tel: (202) 220-1452 |
| Fax: (212) 614-6499 | Fax: (202) 220-1665 |
| | |
| *Of Counsel for Petitioner* | Stephen M. Truitt (DC # 13235 ) |
| | 600 Fourteenth Street, N.W., Suite 500 |
| | Washington, DC 20005-2004 |
| | Tel: (202) 220-1452 |
| | Fax: (202) 220-1665 |
| | |
| | Christopher J. Huber |
| | PEPPER HAMILTON LLP |
| | 3000 Two Logan Square |
| | Eighteenth and Arch Streets |
| | Philadelphia, PA 19103-2799 |
| Dated: December 31, 2007 | Tel: (215) 981-4000 |
| | Fax: (215) 981-4750 |
| | *Counsel for Petitioner* |

CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of December, 2007, copies of the foregoing Reply Brief In Support Of Motion To Compel Respondents To Report On Their Compliance With The Court's Preservation Order Of July 18, 2005 were hand-delivered to the Court Security Officer who will serve the following person when the document has been determined unclassified:

    Andrew Warden
    Department of Justice
    Washington, D.C. 20530-0001

_____
Stephen M. Truitt