**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **IN RE:** | ) | Misc. No. 08-0442 (TFH) |
| | ) | |
| **GUANTANAMO BAY** | ) | Civil Action Nos. |
| **DETAINEE LITIGATION** | ) | |
| | ) | 02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, 04-cv-1254, |
| | ) | 04-cv-1937, 04-cv-2022, 04-cv-2046, 04-cv-2215, 05-cv-0023, |
| | ) | 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, |
| | ) | 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569, |
| | ) | 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877, |
| | ) | 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994, |
| | ) | 05-cv-0998, 05-cv-0999, 05-cv-1048, 05-cv-1124, 05-cv-1189, |
| | ) | 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, 05-cv-1429, |
| | ) | 05-cv-1457, 05-cv-1487, 05-cv-1490, 05-cv-1497, 05-cv-1504, |
| | ) | 05-cv-1506, 05-cv-1555, 05-cv-1592, 05-cv-1601, 05-cv-1607, |
| | ) | 05-cv-1623, 05-cv-1638, 05-cv-1645, 05-cv-1646, 05-cv-1678, |
| | ) | 05-cv-1971, 05-cv-1983, 05-cv-2088, 05-cv-2104, 05-cv-2185, |
| | ) | 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367, |
| | ) | 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380, 05-cv-2384, |
| | ) | 05-cv-2385, 05-cv-2386, 05-cv-2387, 05-cv-2479, 06-cv-1668, |
| | ) | 06-cv-1684, 06-cv-1690, 06-cv-1758, 06-cv-1761, 06-cv-1765, |
| | ) | 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338, |
| | ) | 08-cv-0987, 08-cv-1101, 08-cv-1104, 08-cv-1153, 08-cv-1207, |
| | ) | 08-cv-1221, 08-cv-1224, 08-cv-1228, 08-cv-1230, 08-cv-1232, |
| | ) | 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238, |
| | ) | 08-cv-1360, 08-cv-1440, 08-cv-1733, 08-cv-1789, 08-cv-1805, |
| | ) | 08-cv-1828, 08-cv-1923, 08-cv-2019, 08-cv-2083 |
| | ) | |

**RESPONDENTS' RESPONSE TO PRESS
APPLICANTS' MOTION TO INTERVENE**

Respondents respectfully oppose the motion by the Associated Press, the New York Times Company, and USA Today to intervene in these *habeas corpus* proceedings. The Press Applicants, relying on what they assert to be the right of public access to court records, request the opportunity to oppose the motion filed by Respondents in several of these actions[1] for

---

[1] Respondents' Motion was filed specifically in those cases in which an "unclassified" factual return had been or would be served. It was not filed in all cases consolidated under the

confirmation of the designation of "protected information" applied by Respondents to the "unclassified" factual returns that have been and will be served on counsel for Petitioners. *See* Respondents' Motion to Confirm Designation of Unclassified Factual Returns as "Protected," Misc. No. 08-442 (Dec. 29, 2008) (dkt. no. 1416) ("Respondents' Motion").

Neither the First Amendment nor the common law creates a right of access to judicial records in civil proceedings in general or in these *habeas corpus* proceedings in particular in the manner requested by the Press Applicants. The qualified right of access to judicial proceedings is confined to criminal proceedings. Moreover, the Press Applicants have not demonstrated a basis upon which either the First Amendment or common law right of access should be extended or modified to allow inspection, assembly, and publication of information, including in versions of the factual returns, which is classified or otherwise subject to protection under the Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, entered by this Court on September 11, 2008 (Misc. No. 08-442, dkt. no. 409) ("Protective Order").

**ARGUMENT**

**I.     Neither the First Amendment Nor the Common Law Provides the Press Applicants with Any Right of Access to the "Unclassified" Returns**

The Court of Appeals for this Circuit has held that the qualified First Amendment right of access to judicial proceedings applies only to criminal proceedings and does not extend to civil proceedings. See *Center For National Security Studies* v. *U.S. Dep't of Justice*, 331 F.3d 918, 935 (D.C. Cir. 2003) (*CNSS*) ("Neither the Supreme Court nor this Court" has recognized a constitutional right of public access "outside the context of criminal judicial proceedings").

---

aegis of *In re: Guantanamo Bay Detainee Litigation*, 08-MC-0442. The Press Applicants' motion, however, has been filed in all consolidated cases. Accordingly, this response is also filed in all cases.

While a few other Circuits have extended a qualified First Amendment right of access to some civil cases, this Circuit has continued to adhere to the Supreme Court's narrower view.  *See Flynt* v. *Rumsfeld*, 355 F.3d 697, 704 (D.C. Cir. 2004); *CNSS*, 331 F.3d at 934 (no controlling case has "ever *indicated* that it would apply [the right of access cases] to anything other than criminal judicial proceedings").

The cases from this jurisdiction, as well as the U.S. Supreme Court decisions, upon which the Press Applicants rely (*see* Motion, pp. 3-4) do not support a First Amendment or common law right of public access to civil habeas proceedings.

*Globe Newspapers Co. v. Superior Court*, 457 U.S. 596 (1982), concerned a Massachusetts statute limiting the press and the public's access to a *criminal* trial.  Likewise, *Press-Enterprise v. Superior Court*, 478 U.S. 1 (1986), *Gannett Co. v. DePasquale*, 443 U.S. 368 (1979), and *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), related to access to materials in *criminal* proceedings.

In this Circuit, *Washington Post Co. v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991), involved access to a sealed plea agreement in a *criminal* case.  Both *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1981) and *In re Application of the New York Times Co. for Access to Certain Sealed Records*, 585 F.Supp.2d 83 (D.D.C. 2008), involved access to search warrants in *criminal* cases.

*EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042 (D.C. Cir. 1998), a civil case, concerned a private party permitted to intervene because, among other things, she was pursuing a separate action in D.C. Superior Court that "plainly shares common questions with the main action in [*EEOC v. Nat' Children's Ctr.,* Inc.]," and her request thus satisfied the requirements of Rule 24, Federal Rules of Civil Procedure, for permissive intervention of a private party.  *Id.*, at

1047-48.  *Johnson v. Greater SE Community Hospital*, 951 F.2d 1268 (D.C. Cir. 1991), a civil case, did not concern intervention.  The issue was whether certain papers warranted remaining under seal, and the case was remanded with directions that the district court either unseal or articulate precise reasons to seal the papers at issue.  Finally, *New York v. Microsoft Corp.*, 2002 WL 318565 (D.D.C. Jan. 28, 2002), a civil case, turned on the interpretation of the Publicity in Taking Evidence Act of 1913, 15 U.S.C. § 30, and F.R. Civ. P. 26(c), and addressed only the issue of the right of non-parties to attend depositions.  The case in no way addressed a right of public access to judicial records.

Of course, the decision cited by the Press Applicants that is closest in subject matter, if not procedure, to these *habeas corpus* proceedings is *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008), which involved a Guantanamo Bay detainee's challenge to his enemy combatant status determination under the Detainee Treatment Act, 10 U.S.C. § 801 note.  The issue of intervention was not before the Court.  The Court simply denied without prejudice the Government's motion to seal a portion of the record and directed that the Government state more explicit reasons for the matters sought to be sealed.

In short, applicable precedent in this Circuit does not support the instant application to intervene in these cases.

## II.    The Press Applicants Have Presented No Basis Upon Which this Court Should Deviate from this Circuit's Established Precedent.

Press Applicants' motion fails to note this Circuit's precedent denying the qualified right of public access to civil judicial proceedings; nevertheless, the motion does endeavor to articulate Press Applicants' grounds for seeking to intervene.  None of the grounds stated, however, are sufficient to warrant a departure from precedent.

That these *habeas corpus* cases "concern matters of great national and international importance and are closely followed by the public here and abroad" (Press Applicants' Motion, p. 2) is true beyond peradventure. But it is also true that these cases involve the most sensitive of information, some of which is classified, and they also concern persons that are adversaries of the United States. Moreover, the Court has already established through the Protective Order the process for judicial protection of the parties' various interests, including interests in national security and in transparent proceedings. The Protective Order, the procedures of which are being followed by Respondents, is the mechanism by which this Court is resolving these important interests.

The Press Applicants further argue that their intervention "is critically important, particularly given that the question of whether the government is classifying material to avoid public scrutiny of embarrassing information has itself become a subject of considerable debate." Motion, p. 3. But the broadcasting and discussion of such unfettered allegations does not constitute a "debate" to which the Court and the parties are bound to defer. While the public is presently barred from examination of certain information, both the Court and Petitioners' counsel have been permitted to see appropriate classified information pertaining to their respective clients upon which the Government relied to justify petitioners' detention. Petitioners' counsel are capable of challenging the Government's classification decisions and, where they deem it necessary, are in fact challenging such decisions. The Court, in the meantime, through the mechanism of the Protective Order and by its control of the litigation supervises to the degree appropriate the issue of whether information is being improperly withheld from the public record. For example, the Protective Order requires the filing of appropriately redacted Court submissions. *See* Protective Order, ¶ 48(a). Further, the Court has

a role in determining whether "protected" information remains properly under seal, i.e., protected. *See id.* at ¶ 34. The goal of the public's reasonable access to these proceedings is being met.

**A.** For the foregoing reasons, the First Amendment right of access, confined by sound and unambiguous precedent to criminal proceedings, should not be extended to the "protected" information in these proceedings. Before a First Amendment right of access will attach to a proceeding, the entity seeking access must make two showings: first, that "the place and process" to which access is sought "have historically been open to the press and general public," and second, that "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 8-9 (1986). A failure to make either showing is fatal to a First Amendment access claim. *United States* v. *El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997); *In re Reporters Committee*, 773 F.2d 1325, 1332 (D.C. Cir. 1985). Here, neither showing has been made.

There is no tradition of public access to *habeas corpus* proceedings for review of enemy combatant status, much less a tradition of access to classified or "protected" information in such proceedings. While the Supreme Court held in *Boumediene v. Bush*, 128 S.Ct. 2229 (2008) that constitutionally based *habeas corpus* extends to aliens held at Guantanamo Bay, there is no tradition of judicial proceedings at all in these circumstances, much less open proceedings. *See El-Sayegh*, 131 F.3d at 161 ("There can hardly be a historical tradition of access to the documents accompanying a procedure that did not exist until . . . 1991."). At most, there is a tradition of *closed* proceedings that relate to aliens who are not in the United States. *North Jersey Media Group v. Ashcroft*, 308 F.3d 198, 211 (3d Cir. 2002) (recognizing that "since the

1890s, when Congress first codified deportation procedures, '[t]he governing statutes have always expressly closed *exclusion* hearings'").[2]

The lack of any history of public access contrasts sharply with the history of criminal trials, which have been open to the public from "the days before the Norman Conquest." *Press-Enterprise*, 478 U.S. at 8. And while military tribunals themselves are generally open, that policy has never extended to classified information. To the contrary, military procedures for classifying detained combatants in traditional conflicts, which were cited with approval in *Hamdi v. Rumsfeld*, 542 U.S. 507, 538 (2004) (plurality opinion), provide that "[p]roceedings shall be open except for . . . matters which would compromise security if held in the open." Army Reg. 190-8, § 1-6(e)(3). And in these *habeas corpus* proceedings, the Court has already established that some portions of the proceedings of necessity will be closed to the public, for which purpose a properly secured courtroom has been prepared.

Public access also does not and would not "play[] a significant positive role in the functioning of the particular process in question." *Press-Enterprise*, 478 U.S. at 8. This calculation must take account of "the extent to which openness impairs the public good." *North Jersey Media Group*, 308 F.3d at 217. Here, the public good would be severely impaired, because public disclosure of classified and protected information would cause damage to national security. The Supreme Court has recognized this potential harm in the context of enemy detainees in the conflict against al Qaeda. *See Hamdi*, 542 U.S. at 532. Indeed, in *Boumediene*, the Supreme Court cautioned that courts may not "disregard the dangers the detention in these cases was intended to prevent." 128 S.Ct. at 2276. There, the Supreme Court anticipated the

---

[2] In deportation cases, there is also no tradition of public access to material that may form the basis of habeas proceedings. *Cf. id.* at 211, 221 (acknowledging the right to seek habeas review of deportation proceedings, but finding an "insufficient tradition of openness to support the right" to access immigration proceedings).

problem Press Applicants' motion presents, highlighting the Government's "legitimate interest in protecting sources and methods of intelligence gathering," and noting the Court's "expect[ation] that the District Court will use its discretion to accommodate this interest to the greatest extent possible." *Id.* This Court recognized the dangers highlighted by the Supreme Court in *Hamdi* and *Boumediene*, as reflected in its detailed Protective Order governing the procedures for protecting sensitive information.

At the same time, the rules and procedures governing these cases already provide the public with broad access to the proceeding, with public unclassified briefs, open oral arguments, and published opinions. But, in recognition of the sensitive information at issue in these cases, there are numerous filings and proceedings that are properly under seal. These comprehensive procedures are sufficient to inform the public how these cases are decided and to satisfy the "citizen's desire to keep a watchful eye on the workings of" this Court. *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). Moreover, counsel for the scores of petitioners in these cases have access to the classified information not properly shared with the public on the public docket.

In sum, the procedures currently in place protect the sensitive material at issue in these cases without diminishing the parties' rights to protection; disturbing this balance by creating further public access to this sensitive information would create no "significant" benefit, and, instead, would "impair the public good."

This Circuit has recognized the propriety of denying access to classified material in litigation even when access is being sought by a party to the suit rather than, as here, members of the public who are non-parties. See, *e.g.*, *Holy Land Foundation v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003)*; People's Mojahedin v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003);

*Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004).  The Court has likewise declined to allow counsel for a former federal employee to access classified information from his client.  *Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003).  And the Court has frequently crafted protective orders to allow the parties to litigate disputes involving classified information while ensuring that such information remains under seal.  *See*, *e.g.*, *Northrop v. McDonnell Douglas*, 751 F.2d 395, 401 (D.C. Cir. 1984).  If it is permissible to limit the access of private litigants and their counsel to classified information that bears on their claims, it follows *a fortiori* that withholding access does not violate the First Amendment rights of non-party news organizations.

**B.**     The Press Applicants are similarly mistaken in asserting a common law right of access to classified documents in civil cases.  Although federal common law creates a qualified right of access to public records in general, see *Washington Legal Foundation* v. *U.S. Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996), the contours of the right are "largely controlled by the second of the First Amendment criteria-the utility of access as a means of assuring public monitoring of judicial or prosecutorial misconduct."  *El-Sayegh*, 131 F.3d at 161.  Those criteria are not satisfied here, because the assembly and public release of the totality of the unclassified factual returns is not essential to the functioning of the judicial process; and its release would harm national security.  *See, generally*, Respondents Motion to Confirm Designation of Unclassified Factual Returns as "Protected", Dkt. # 1416, 08-mc-0442.

More fundamentally, neither this Court nor any other court has ever extended a common law right of access to classified information.  The common law right of access to public records, like other federal common law rights, "is subject to the paramount authority of Congress," and "[w]hen Congress addresses a question previously governed by . . . federal common law[,] the need for such an unusual exercise of lawmaking by federal courts disappears."  *City of*

*Milwaukee* v. *Illinois*, 451 U.S. 304, 314 (1981) (internal quotation marks omitted).  Here, Congress has made the policy judgment that classified information should not be disclosed to the public and has embodied that judgment in legislation.  Thus, for example, the Freedom of Information Act exempts from disclosure those matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. 552 § (b)(1)(A)-(B); *see also* 18 U.S.C. § 793; 50 U.S.C. §§ 421, 783 (criminal provisions related to release of classified information); 18 U.S.C. App. § 6(e)(1) (Classified Information Procedures Act).

Taken together, these provisions embody a broad Congressional policy against unauthorized disclosure of classified information, including disclosure to the public.  That policy precludes the creation of a conflicting common law right of access, for the courts may not "continue to rely on federal common law by judicial[] decree[] . . . when Congress has addressed the problem."  *City of Milwaukee*, 451 U.S. at 315.

**III.    The Press Applicants Have Cited No Grounds Upon Which the Court Should Deny Respondents' Motion to Confirm the Designation of the Unclassified Factual Returns as "Protected Information"**

The unclassified factual returns at issue here contain properly classified material, the public disclosure of which would pose a significant risk of harm to the security interests of the United States.  As explained in Respondents' Motion, these unclassified factual returns were produced rapidly to allow Petitioners' counsel to prepare their cases without undue delay.  Specifically, the Government redacted the classified factual returns on a compressed schedule to promptly provide Petitioners' counsel versions of the factual returns–the unclassified returns–

which could be disclosed to their clients and to witnesses in their respective proceedings.[3] Regrettably, the speed of the redaction process resulted in errors, and subsequent review has revealed that classified material was not fully redacted from the unclassified returns.

As explained in Respondents' Motion, if the unclassified factual returns were released to the public now, as Press Applicants request, the classified information contained therein could be aggregated and analyzed by interests hostile to the United States. As the D.C. Circuit has recognized, the sum of small pieces of information such as those contained in the returns at issue here "can be analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate." *Halkins v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978) (observing that "the business of foreign intelligence gathering in this age of computer technology is more akin to the construction of a mosaic than it is to the management of a cloak and dagger affair"). Those insights, in turn, could be used to develop or further hostile actions against the United States and its allies.

To protect against these grave risks, Respondents have requested limited relief from the Court. Respondents do not seek to keep all of the information at issue sealed "indefinitely" as Press Applicants suggest. *See* Motion, p. 2. Rather, Respondents ask that the Court confirm the designation of the unclassified returns as "protected" to allow sufficient time for Respondents to complete the declassification review of the returns and, ultimately, preparation of a declassified version of the returns for filing on the public record. This modest accommodation would ensure that the version of these documents ultimately released to the public contains no properly classified information. Further, as outlined in Respondents' Motion, Respondents have no objection to Petitioners' counsels' limited disclosure of the unclassified returns to their

---

[3] These unclassified returns may thus be disclosed by Petitioners' counsel provided that those disclosures occur in accordance with the terms set forth in the Protective Order.

respective clients and the witnesses necessary to prepare their cases.

Press Applicants' argument that following this process would "highlight" for the detainees "the very facts the Government does not want the public to know" (Motion, pp. 2, 6, 14) misapprehends the nature of the risks posed by the wholesale disclosure they seek. While the limited disclosure contemplated by Respondents' Motion would entail each Petitioner's counsel sharing isolated information from a particular unclassified return with his or her individual client and, possibly, specific witnesses necessary to that case, Petitioners and other detainees, as a practical matter, would not have access to the totality of the information contained in all of the unclassified returns. Only if those discreet pieces of information were retained by every detainee, systematically collected from those individuals, and compared with the subsequently-released declassified returns could the "highlighting" Press Applicants describe occur. This scenario is improbable at best. However, one would need to posit no feats of memorization or coordination among scores of individual detainees to conclude that posting the unclassified returns on the public docket would pose a threat that the totality of the information would be analyzed by hostile interests. Indeed, the D.C. Circuit contemplated similar analysis using computer technology over thirty years ago. *See Halkins*, 598 F.2d at 8. It is this very analysis of the totality of the unclassified returns which poses a risk to national security, rather than the piecemeal disclosure of specific facts to individual detainees. Confirming the designation of those returns as "protected" while the Government completes the process of declassification review and ultimate preparation of a declassified, public docket version of the returns would guard against that danger, while ensuring that the public gains access to appropriate non-classified information.

CONCLUSION

For the foregoing reasons, Press Applicants' Motion to Intervene should be denied, and Respondents' Motion to confirm designation of the unclassified factual returns as "protected information" should be granted.

Dated: January 30, 2009

Respectfully submitted,

MICHAEL F. HERTZ
Acting Assistant Attorney General


   */s/ Julia Berman*
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
ANDREW I. WARDEN
PAUL E. AHERN
DAVID H. WHITE
JULIA A. BERMAN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel:  202.616.8480
Fax: 202.616.8470
Email: julia.berman@usdoj.gov
Attorneys for Respondents