**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GHEREBI v. OBAMA | ) | Civil Action No. 04-1164 (RBW) |
| | ) | |
| MOHAMMAD v. OBAMA | ) | Civil Action No. 05-0879 (RBW) |
| | ) | |
| BOSTAN v. OBAMA | ) | Civil Action No. 05-0883 (RBW) |
| | ) | |
| NASRULLAH v. OBAMA | ) | Civil Action No. 05-0891 (RBW) |
| | ) | |
| AL-KHALAQI v. OBAMA | ) | Civil Action No. 05-0999 (RBW) |
| | ) | |
| AMON v. OBAMA | ) | Civil Action No. 05-1493 (RBW) |
| | ) | |
| ZAID v. OBAMA | ) | Civil Action No. 05-1646 (JDB) |
| | ) | |
| AL-SOPAI v. OBAMA | ) | Civil Action No. 05-1667 (RBW) |
| | ) | |
| KHANDAN v. OBAMA | ) | Civil Action No. 05-1697 (RBW) |
| | ) | |
| AL JAYFI v. OBAMA | ) | Civil Action No. 05-2104 (RBW) |
| | ) | |
| AL SANANI v. OBAMA | ) | Civil Action No. 05-2386 (RBW) |
| | ) | |
| WASIM v. OBAMA | ) | Civil Action No. 06-1675 (RBW) |
| | ) | |
| KHAN v. OBAMA | ) | Civil Action No. 06-1690 (RBW) |
| | ) | |
| NASSER v. OBAMA | ) | Civil Action No. 07-1710 (RBW) |
| | ) | |
| DOKHAN v. OBAMA | ) | Civil Action No. 08-0987 (JDB) |
| | ) | |
| KHAN v. OBAMA | ) | Civil Action No. 08-1101 (JDB) |
| | ) | |
| AL QYATI v. OBAMA | ) | Civil Action No. 08-2019 (RBW) |
| | ) | |

**RESPONDENTS' STATUS REPORT ADDRESSING INFORMATION
GATHERING EFFORTS OF GUANTANAMO REVIEW TASK FORCE**

Pursuant to the Court's Orders of February 9, 2009, March 4, 2009, March 27, 2009, and April 10, 2009, Respondents hereby submit a status report regarding the efforts undertaken by the Guantanamo Review Task Force to assemble information in accordance with Section 4(c)(1) of Executive Order 13,492, 74 Fed. Reg. 4897 (Jan, 27 2009). *See* Order, Civ. No. 05-1646, Feb 9, 2009 (Dkt. No. 146) at 4-5; Order, Civ. No. 08-987, Mar. 4, 2009 (Dkt. No. 89) at 2; Order, Civ. No. 08-1101, Mar. 4, 2009 (Dkt. No. 85) at 2; Order, Civ. No. 04-1164, Mar. 27, 2009 (Dkt. No. 207) at 6; Order, Civ. No. 08-1101, Apr. 10, 2009 (Dkt. No. 104) ("the Court's Orders"). Collectively, the Court's Orders direct Respondents to advise whether the process outlined in Section 4(c)(1) has been completed, providing an estimated completion date if it has not, and also inform the Court whether the process has yielded additional information -- including specific categories of information[1] -- regarding 45 petitioners in the above-captioned cases.

As explained in the attached declaration of Matthew G. Olsen, Executive Director of the Guantanamo Review Task Force, dated April 15, 2009, the Guantanamo Review Task Force was created pursuant to Executive Order 13,492, in which President Obama directed the Attorney General and other senior officials to conduct "a prompt and thorough review of the factual and legal bases for the continued detention of all individuals currently held at [Guantanamo Bay]," so as to make a determination whether each detainee can be transferred or released, prosecuted for criminal conduct, or provided

---

[1] *See* Order, Civ. No. 08-987, Mar. 4, 2009 (Dkt. No. 89) at 2 ("whether respondents have obtained additional information responsive to Sections I.D or I.E of the CMO and whether all such information has been produced to petitioner"); Order, Civ. No. 08-1101, Mar. 4, 2009 (Dkt. No. 85) at 2 (same); Order, Civ. No. 05-1646, Feb 9, 2009 (Dkt. No. 146) at 5 ("whether respondents have obtained additional versions of statements . . . made or adopted by the petitioner that the government relies on to justify detention."); Order, Civ. No. 08-1101, April 10, 2009 (Dkt. No. 104) ("advise how long they estimate it would take to search the information gathered pursuant to the Executive Order for evidence regarding bounties paid in petitioners' case – either bounties for petitioner's apprehension or bounties for information about petitioner").

another lawful disposition consistent with "the national security and foreign policy interests of the United States and the interests of justice."  Olsen Decl., ¶ 4 (quoting Exec. Order No. 13,492, § 2(d)).  To this end, the Attorney General established the Task Force (less than two months ago) to assemble and examine "relevant information" and make recommendations "regarding the proper disposition of each individual currently detained at Guantanamo Bay."  *Id.*, ¶ 6.  However, because the government has no preexisting, consolidated repository of information concerning Guantanamo Bay detainees, the Task Force initiated an effort, soon after its formation, to make available for its members' use the disparate information that various national-security, law-enforcement and intelligence agencies maintain on the detainees.  While the Task Force has made substantial progress with this endeavor, it has not compiled this information into a uniform, text-searchable database – contrary to what has been reported in the media – and it is not reasonably practicable to do so.  *Id.*, ¶¶ 9-11; *see also id.*, ¶ 13.

Although some information has been uploaded directly into the Task Force's computer network, in some cases agencies have simply given the Task Force access to pre-existing databases that they maintain on their own systems, and which must be searched separately.  *Id.*, ¶ 11.  Other agencies seeking to provide detainee-related information that can be uploaded directly into the Task Force's network must first search for it and segregate it from broader collections of intelligence in their databases, a resource-intensive process that a number of agencies are conducting on a rolling basis in accordance with the review priorities of the Task Force.  *Id.*, ¶ 12.  In short, while the Task Force has assembled significant amounts of detainee-related information, the effort remains ongoing, and, even when completed, it is not expected to result in a consolidated

database of all information concerning Guantanamo Bay detainees in the government's possession. *Id.*, ¶ 13.

Making available information that the Task Force has gathered could be highly problematic for the additional reason that much of it is classified at very high levels, meaning that it is not readily accessible by persons outside the Task Force, even by most of the Justice Department counsel involved in the Guantanamo habeas litigation. The Task Force itself has only a limited number of staff responsible for collecting and reviewing detainee information, many of whom are not attorneys, who are generally unfamiliar with the scope of outstanding discovery orders and obligations in particular cases, and whose time and attention cannot be diverted to discovery searches pertaining to more than 200 habeas petitioners without running the risk of seriously compromising the progress of the review the President has ordered. Moreover, inasmuch as the classified information that the Task Force possesses originates from other agencies, the Task Force cannot authorize its release to persons outside the government, including detainees' counsel, without obtaining required clearances from these agencies. Olsen Decl., ¶¶ 15-17.

For these reasons, Respondents cannot provide an estimated date by which the Task Force will complete its information gathering efforts. The process is expected to remain ongoing for the foreseeable future. Olsen Decl., ¶ 13. Further, although the Task Force has collected information concerning many detainees to date that typically would not have been included in the information made available to the habeas litigators, it would be a burdensome and time-consuming process to compare the information the Task Force has collected about individual detainees to information previously made

available to the Department of Justice habeas litigation team.  *Id.*, ¶ 14.  Accordingly, it cannot readily be ascertained at this time whether the Task Force has yet gathered "additional" information about each of the petitioners in the above-captioned cases (or any other particular detainees) that has not already been made available to Justice Department counsel in the habeas cases.[2]  *Id.*

Respondents are continuing to work with the Task Force and affected agencies concerning the information collection efforts and will provide the Court with a further submission on or before May 1, 2009.


Dated: April 16, 2009                                    Respectfully submitted,


                                          MICHAEL F. HERTZ
                                          Acting Assistant Attorney General

                                          TERRY M. HENRY
                                          JAMES J. GILLIGAN
                                          Assistant Branch Directors

                                           */s/ Andrew I. Warden*
                                          ANDREW I. WARDEN (IN Bar 23840-49)
                                          PAUL E. AHERN
                                          FREDERICK S. YOUNG
                                          CHRISTOPHER HARDEE
                                          Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, N.W.
                                          Washington, D.C. 20530
                                          Tel: (202) 616-5084
                                          Fax: (202) 616-8470
                                          Email: Andrew.warden@usdoj.gov

                                          Attorneys for Respondents

---

[2] This includes whether the Task Force has specific "additional" information responsive to the various case management and discovery orders.

## **DECLARATION OF MATTHEW G. OLSEN**

Pursuant to 28 U.S.C. § 1746, I, Matthew G. Olsen, hereby declare:

1. I am the Executive Director of the Guantanamo Review Task Force ("Task Force"). I was appointed to this position by the Attorney General on February 20, 2009. Prior to this appointment, I served as the Deputy Assistant Attorney General for the Office of Intelligence in the Department of Justice's National Security Division and, more recently, as Acting Assistant Attorney General for National Security.

2. I understand that the Court has issued orders in a number of the Guantanamo habeas cases inquiring whether the Task Force has gathered information about individual detainees and, in some cases, directing the Government to make certain information available to the detainees' counsel if possessed by the Task Force. Shortly after the Court issued these orders, counsel from the Department of Justice responsible for litigating these cases contacted the Task Force to determine the nature and extent of the information in the Task Force's possession, whether it would be practicable to provide the information sought by the Court, and, if so, how long it would take to make this information available.

3. A full response to the Court's orders will require further consultation among the Task Force, litigation counsel, and the numerous national-security agencies, law-enforcement agencies, and other agencies that have provided (and continue to provide) information to the Task Force about individual Guantanamo detainees. The purpose of this declaration is to provide general information about the current status of the Task Force's efforts to assemble information pertaining to the detainees at Guantanamo Bay. This declaration is based upon my personal knowledge and information made available to me in the course of my official duties.

## Background of the Task Force

4. The Task Force was created pursuant to Executive Order 13,492, titled "Review and Disposition of Individuals Detained at the Guantanamo Bay Naval Base and Closure of Detention Facilities." *See* Exec. Order No. 13,492, 74 Fed. Reg. 4897 (Jan. 22, 2009) ("Executive Order"). The Executive Order, signed January 22, 2009, directs the closure of the Guantanamo Bay detention facility within one year of the date of the order. *Id.* § 3. To that end, the Executive Order commands "a prompt and thorough review of the factual and legal bases for the continued detention of all individuals currently held at [Guantanamo Bay]" to determine whether each detainee can be transferred or released, prosecuted for criminal conduct, or provided another lawful disposition consistent with "the national security and foreign policy interests of the United States and the interests of justice." *Id.* at §§ 2(d).

5. Section Four of the Executive Order establishes the basic framework by which this review is to be conducted. The participants to the review are identified as the Attorney General, who shall coordinate the review, the Secretary of Defense, the Secretary of State, the Secretary of Homeland Security, the Director of National Intelligence, the Chairman of the Joint Chiefs of Staff, and any other officers or employees of the United States as determined by the Attorney General, with the concurrence of the head of the department or agency concerned. *Id.* at §§ 4(b).

6. Pursuant to his responsibility to coordinate the review contemplated by the Executive Order, the Attorney General established the Guantanamo Review Task Force in late February 2009. The Task Force is charged with assembling and examining relevant information and making recommendations regarding the proper disposition of each individual currently detained at Guantanamo Bay.

7. The Task Force consists of interagency review teams with members drawn from various agencies, including the Department of Defense, the Department of State, the Department of Justice, the Department of Homeland Security, and various elements of the intelligence community. In my capacity as Executive Director, I supervise the day-to-day operations of the Task Force. I also formulate and present its recommendations to a Review Panel of senior-level officials with delegated authority to decide the disposition of individual detainees.

### Status of the Task Force's Efforts to Assemble Detainee-Related Information

8. Section 4(c)(1) of the Executive Order requires the following:

The Attorney General shall, to the extent reasonably practicable, and in coordination with the other Review participants, assemble all information in the possession of the Federal Government that pertains to any individual currently detained at Guantanamo and that is relevant to determining the proper disposition of any such individual. All executive branch departments and agencies shall promptly comply with any request of the Attorney General to provide information in their possession or control pertaining to any such individual. The Attorney General may seek further information relevant to the Review from any source.

9. Since my appointment to serve as Executive Director, one of my goals has been to ensure that the Task Force has access to a collection of information that is as comprehensive as reasonably practicable concerning the detainees at Guantanamo Bay. The government has no pre-existing, consolidated repository of information concerning the Guantanamo Bay detainees to which the Task Force could simply be given access privileges. Rather, those federal agencies with information concerning the Guantanamo Bay detainees maintain such information in their own separate systems of records, consistent with their respective missions and operating protocols.

10. Accordingly, soon after the Task Force was formed, we initiated an effort to make this disparate information available for use by Task Force members. Through this effort, we have collected, or obtained access to, various information from the Department of Defense –

including but not limited to the Office for the Administrative Review of Detained Enemy Combatants ("OARDEC") and the Joint Intelligence Group ("JIG"), from which I understand information has previously been made available to Department of Justice attorneys handling the Guantanamo habeas litigation – as well as from the Department of Justice, the Department of State, the Department of Homeland Security, the Federal Bureau of Investigation, the Central Intelligence Agency, and various other elements of the intelligence community. This project is a complex and ongoing endeavor, involving more than a simple consolidation of data into a single database.

11. Due to the varying information systems of the agencies possessing potentially relevant information, it is not reasonably practicable to assemble all of the information into a unified, comprehensive database. Rather, while some information is being uploaded directly to the stand-alone computer network used by the Task Force ("TF network"), other information is presently being provided through different means. In particular, members of the Task Force have access to pre-existing databases that certain agencies maintain separately on their own systems, allowing them to conduct searches on these databases as if they were located in those agencies. Importantly, these systems can be searched only through their own search engines and are not co-searchable with information on the TF network.

12. Although the Task Force is seeking to collect as much information as possible from agencies in a form that can be uploaded directly onto the TF network, the process of obtaining and compiling this information is necessarily proceeding on a rolling basis. Agencies were tasked in January 2009 to begin searching for information in their possession concerning Guantanamo detainees for purposes of the review required by the President's Executive Order. Some of this information was stored on systems dedicated to Guantanamo-detainee information

and easily retrieved and transferred to the TF network – such as information obtained from OARDEC. However, other agencies do not maintain detainee-related information on separate, dedicated systems, and for them the process of culling detainee-related information in their possession has proven more burdensome. Some of these agencies, for example, must segregate detainee-related information from a much broader universe of intelligence contained in their various agency-wide databases, in essence conducting over 200 separate searches for records pertaining to individual detainees. These searches can be highly resource-intensive, especially where, for example, the detainee's name is a common one in the Arab-speaking world, thus requiring efforts to screen false positives, or where the detainee has a number of aliases, each requiring a separate search. Accordingly, these searches are being performed with respect to discrete subsets of detainees at a time, in coordination with the review priorities of the Task Force. Consequently, the information on the TF network tends to be more voluminous with respect to detainees whose reviews have already been completed or begun, or who are a priority for review in the near future.

13. In short, the Task Force's effort to compile information about the Guantanamo Bay detainees remains ongoing. I am aware of various media reports and arguments advanced by counsel for Guantanamo petitioners giving the impression that the Task Force has completed its assembly of information and currently has in its possession a "source of easily accessible information" about all of the detainees. *See, e.g.,* Peter Finn & Carrie Johnson, *Federal Courts in Va., N.Y. May Take Some Guantanamo Cases,* WASH. POST, Mar. 7, 2009, at A5 ("Federal authorities have finished compiling detailed electronic dossiers on 241 detainees who remain in the U.S. military prison at Guantanamo Bay."); *see also* Order, *Zaid v. Bush,* 05-CV-1646 (JDB) (dkt. no. 146). That is simply not the case. The Task Force's efforts in this regard are not

complete and, indeed, are expected to remain continuing for the foreseeable future. Moreover, even when these efforts are completed, the end product is not expected to be a single, consolidated database comprising all detainee-related information in the Government's possession; rather, such information will be accessible to the Task Force through a variety of discrete information systems.

### Anticipated Obstacles to Making Task Force Information Available for Litigation Purposes

14. I understand that the Court in various cases has ordered the Government to determine, with respect to a large number of detainees, whether the Task Force has collected information concerning these detainees that has not already been provided to Government litigation counsel. A determination whether particular information about an individual detainee has been previously made available for purposes of habeas litigation cannot be made definitively without a time-consuming comparison of the documents in the Task Force's possession concerning each particular detainee with the collection of information previously made available to the habeas litigation team. As a general matter, however, I can confirm that the Task Force has collected information concerning many detainees to date that typically would not have been included in the information made available to habeas litigators.

15. Making information possessed by the Task Force available for purposes of the habeas litigation would be highly problematic, not only in light of the foregoing considerations, but for additional reasons as well. As an initial matter, significant amounts of the information gathered and reviewed by the Task Force are classified at very high levels, including TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION ("TS//SCI"). For this reason, the Task Force is housed in a secure Government facility, access to which is tightly restricted to individuals holding the requisite TS//SCI clearance and possessing an appropriate need to know.

Likewise, the Task Force's stand-alone network is stored on a sensitive computer system to which access is similarly restricted. The information possessed by the Task Force is thus not readily accessible to persons outside the Task Force.

16. Moreover, the classified information accessible to the Task Force originates from a variety of intelligence agencies. As a result, the Task Force cannot authorize its release to persons outside the Government, such as counsel for habeas petitioners; rather, clearance would have to be obtained from the originating agencies in order to allow for such release. Indeed, some of the classified information accessible to the Task Force is subject to strict controls and cannot even be removed from the secure facility where the Task Force is housed – even for purely intra-governmental purposes – without the originating agency's approval.

17. Finally, it would not be feasible or appropriate for the Task Force itself to become involved in conducting searches for information related to the Guantanamo habeas litigation. The Task Force has a limited number of staff responsible for collecting and reviewing detainee information, many of whom are not attorneys. They are generally unfamiliar with the litigation aspects of the habeas proceedings and the scope of outstanding discovery orders and obligations in particular cases. Most importantly, diverting their time and attention to discovery searches in the habeas litigation would seriously compromise the progress of the review ordered by the President, which is the sole purpose for which the Task Force has been constituted.

18. I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 16, 2009
Washington, DC

_____
Matthew G. Olsen