**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| IN RE: ) | Misc. No. 08-442 (TFH) |
| GUANTANAMO BAY ) |  |
| DETAINEE LITIGATION ) |  |
| ) | 02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, |
| ) | 04-cv-1254, 04-cv-1937, 04-cv-2022, 04-cv-2035, |
| ) | 04-cv-2046, 04-cv-2215, 05-cv-0023, 05-cv-0247, |
| ) | 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, |
| ) | 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, |
| ) | 05-cv-0569, 05-cv-0634, 05-cv-0748, 05-cv-0763, |
| ) | 05-cv-0764, 05-cv-0877, 05-cv-0883, 05-cv-0889, |
| ) | 05-cv-0892, 05-cv-0993, 05-cv-0994, 05-cv-0998, |
| ) | 05-cv-0999, 05-cv-1048, 05-cv-1189, 05-cv-1124, |
| ) | 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, |
| ) | 05-cv-1429, 05-cv-1457, 05-cv-1458, 05-cv-1487, |
| ) | 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1505, |
| ) | 05-cv-1506, 05-cv-1509, 05-cv-1555, 05-cv-1592, |
| ) | 05-cv-1601, 05-cv-1602, 05-cv-1607, 05-cv-1623, |
| ) | 05-cv-1638, 05-cv-1639, 05-cv-1645, 05-cv-1646, |
| ) | 05-cv-1678, 05-cv-1704, 05-cv-1971, 05-cv-1983, |
| ) | 05-cv-2010, 05-cv-2088, 05-cv-2104, 05-cv-2185, |
| ) | 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, |
| ) | 05-cv-2367, 05-cv-2370, 05-cv-2371, 05-cv-2378, |
| ) | 05-cv-2379, 05-cv-2380, 05-cv-2381, 05-cv-2384, |
| ) | 05-cv-2385, 05-cv-2386, 05-cv-2444, 05-cv-2479, |
| ) | 06-cv-0618, 06-cv-1668, 06-cv-1684, 06-cv-1690, |
| ) | 06-cv-1758, 06-cv-1759, 06-cv-1761, 06-cv-1765, |
| ) | 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, |
| ) | 07-cv-2338, 08-cv-0987, 08-cv-1085, 08-cv-1101, |
| ) | 08-cv-1104, 08-cv-1153, 08-cv-1185, 08-cv-1207, |
| ) | 08-cv-1221, 08-cv-1223, 08-cv-1224, 08-cv-1227, |
| ) | 08-cv-1228, 08-cv-1229, 08-cv-1230, 08-cv-1231, |
| ) | 08-cv-1232, 08-cv-1233, 08-cv-1235, 08-cv-1236, |
| ) | 08-cv-1237, 08-cv-1238, 08-cv-1310, 08-cv-1360, |
| ) | 08-cv-1440, 08-cv-1733, 08-cv-1805, 08-cv-2083, |
| ) | 08-cv-1828, 08-cv-1923, 08-cv-2019, 09-cv-0031 |
| ) |  |

**REPLY IN SUPPORT OF THE GOVERNMENT'S MOTION
TO AMEND SEPTEMBER 11, 2008 PROTECTIVE ORDER AND
COUNSEL ACCESS PROCEDURES AND JANUARY 9, 2009 AMENDED
TS/SCI PROTECTIVE ORDER AND COUNSEL ACCESS PROCEDURES**

On March 11, 2009, respondents moved to amend the Protective Orders and Counsel Access Procedures operative in the above-captioned cases, explaining that the current interpretation of certain provisions allows for the improper and unauthorized disclosure of classified national security information to petitioners—persons detained during an armed conflict. *See* Government's Mot. to Amend September 11, 2008 Protective Order and Counsel Access Procedures and January 9, 2009 Am. TS/SCI Protective Order and Counsel Access Procedures, Misc. No. 08-442, Mar. 11, 2009 (Dkt. No. 1684) ("Motion to Amend"). Specifically, this interpretation permits counsel to disclose to a petitioner—notwithstanding the Executive's objection—excerpts derived from sensitive and classified materials in which the Government has documented that petitioner's statements. In the Motion to Amend, respondents discussed the separation of powers concerns and risks to national security arising from such disclosures, and submitted declarations from officials in the Department of Defense ("DoD"), the Criminal Investigation Task Force, and the Central Intelligence Agency explaining the nature of those risks. *See* Declaration of James R. Clapper Jr. ("Clapper Decl."), attached to Motion to Amend as Exhibit B; Declaration of Major Heath Wells ("Wells Decl."), attached to Motion to Amend as Exhibit C; Declaration of Wendy Hilton, filed *ex parte* and *in camera*, Mar. 11, 2009 ("Hilton Decl.").

Petitioners oppose the Motion to Amend, but offer no answer to these dangers and constitutional problems. *See* Pet'r's Resp. to Government's Mot. to Amend September 11, 2008 Protective Order and Counsel Access Procedures and January 9, 2009 TS/SCI Protective Order and Counsel Access Procedures, Misc. No. 08-442, May 11, 2009 (Dkt.

No. 1754) ("Petitioners' Opposition").[1] Instead, petitioners refer to follow-up questions asked in interrogations, and argue that no "disclosure" occurs where a detainee already knows the information being revealed to him. While that proposition may be true, it has no application to the Motion to Amend.

The modest amendments respondents seek would not affect communication regarding information petitioners actually already know. In fact, the proposed amendments specifically provide that counsel may discuss with petitioners any information counsel learn from petitioners during the course of communications. *See*, *e.g.*, Proposed Amended Protective Order ¶ 29 ("Petitioners' counsel shall not disclose to a petitioner-detainee classified information which was not communicated by that petitioner-detainee directly to counsel during the course of communications (i.e., legal mail, counsel meeting)."). Such discussions—and counsel's ability to ask follow up questions—are *not* the subject of the Motion to Amend.

The Motion to Amend focuses only on the content of classified documents prepared by the government that include records of petitioners' statements. The contents

---

[1] In addition to this omnibus opposition, petitioners also submitted two oppositions on behalf of individual detainees: Petitioner's Opposition to Government's Motion to Amend the Protective Order, No. 04-cv-2022, Mar. 23, 2009 (Dkt. No. 262), and Opposition to Motion to Amend Protective Order, No. 05-cv-0023, Mar. 24, 2009 (Dkt. No. 221). The former submission indicates to the Court that the petitioner will be joining in a forthcoming omnibus submission, and also alleges without any elaboration or support that the proposed amendments violate petitioner's "right to counsel, right to due process, and right to confront evidence against him." Petitioner's Opposition to Government's Motion to Amend the Protective Order at 2. However, the Court of Appeals recently held that no such rights have been extended to Guantanamo Bay. *See Kiyemba v. Obama*, 555 F.3d 1022, 1032 (D.C. Cir. 2009). Further, there is simply no basis to allege that these protections would be violated where a petitioner *is* provided access to counsel, and the government is devoting extensive resources to its effort to provide the evidence at issue to the petitioner, as discussed above. The latter submission, on the other hand, advances arguments which were also advanced in the Petitioners' Opposition. *See* Opposition to Motion to Amend Protective Order at 1-3. Those arguments are addressed below in this reply.

of such documents—including which statements government agents chose to record, which materials they chose to omit, and which materials received special attention—is not currently known to petitioners.  Indeed, courts have long recognized that the manner in which a conversation is recorded, in itself, conveys important information.  For this very reason, the Supreme Court has repeatedly held that "forcing an attorney to disclose notes and memoranda of witnesses' oral statements is *particularly* disfavored because it tends to reveal the attorney's mental processes, [such as] 'what he saw fit to write down regarding witnesses' remarks.'"  *Upjohn Co. v. United States*, 449 U.S. 383, 399 (1981) (quoting Hickman v. Taylor, 329 U.S. 495, 513 (1947)) (emphasis added).  In this context, where there is a risk of revealing sensitive national security information, it is even more important for the Court to guard against improper disclosure.

> To be sure, respondents recognize that petitioners should have access to their own statements to the extent respondents rely upon such statements to justify detention.  Indeed, the government has committed tremendous resources to making unclassified and declassified versions of those statements available to petitioners, consistent with the applicable national security limitations on such disclosures.  As described in the Motion to Amend, a full-time staff is working on declassification issues at DoD as part of the Declassification Review Team.  *See* Motion to Amend at 10-11.  When respondents submitted the Motion to Amend, this Team had declassified over 3,000 documents and cleared 8,000 documents for release at their current classification level.  In the time that has elapsed since that filing, the Team has cleared approximately 1,500 additional documents for use at their current classification level and declassified over 2,000 additional documents.  DoD personnel and other agencies with equities in the information at issue here continue to work diligently to prepare those documents for production and to

authorize additional documents for release to petitioners consistent with national security considerations. Amending the Protective Order and Counsel Access Procedures to protect against improper disclosure would in no way impede this process, but would ensure that the information released to petitioners is approved by the national security agencies with the expertise needed to make that determination.

Petitioners' Opposition and the declarations upon which it relies provide no reason why this Court should jettison this process—and the protections it provides—in favor of some form of review by the Privilege Review Team, an entity with neither the expertise nor the constitutional authority required for the undertaking. To begin with, contrary to petitioners' contentions, *see* Petitioners' Opposition at 4-5, the problematic disclosures at issue here were not originally contemplated by the Protective Order. As discussed in the Motion to Amend at 12-15, the litigation history of the Protective Order and the language of the Counsel Access Procedures confirm that only classified information learned by counsel from a detainee could be shared with that detainee. *See*, *e.g.*, Counsel Access Procedures ¶ 31 ("Counsel may not divulge classified information not learned from the detainee to the detainee."); *see also id.* ¶ 12(f) (referring to information "learned from a detainee"); *id.* ¶ 19 (same). In arguing that the Protective Order and Counsel Access Procedures did allow such disclosures, petitioners simply ignore provisions expressly contrary to their position. *See* Petitioners' Opposition at 4-5.

Nor are such disclosures common practice in the intelligence community as petitioners contend. Respondents have submitted three declarations from government officials attesting to the unprecedented and problematic nature of the disclosures at issue here. *See* Clapper Decl.; Wells Decl.; Hilton Decl. Those declarations explained, *inter alia*, that excerpts of petitioners' statements taken from classified government documents

may reveal sensitive information to a detainee.  They may, for example, alert the detainee to the significance of a detail he previously thought inconsequential.  *See, e.g.,* Clapper Decl. ¶ 8; Wells Decl. ¶ 4.[2]  Petitioners' objection that these declarations state that harm from disclosure is *possible*, rather than a *certainty*, *see* Petitioners' Opposition at 9, amounts to no objection at all; it is this very possibility of harm that necessitates the Declassification Review Team's expert analysis.[3]  Indeed, the government's classification regime is built upon precisely these types of predictive, rather than certain, judgments regarding the likelihood of harm that would follow from the disclosure of sensitive information.  *See* Executive Order 12958, as amended (defining classified information as information that "reasonably could be expected to cause" various levels of harm to the national security).

The potential for such harm has long been recognized in the context of attorney work-product protection, and the Supreme Court has repeatedly held that "forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes" as it would disclose "what he saw fit to write down regarding witnesses' remarks."  *Upjohn Co. v. United*

---

[2] Petitioners repeatedly speculate that the potential harm lies in the disclosure of information regarding interrogation techniques.  *See* Petitioners' Opposition at 6-7; Opposition to Motion to Amend Protective Order at 2-3.  There is no basis for that assertion.  As discussed in the Motion to Amend and above in this reply, the potential for harm lies in disclosure of the government agents' analysis, which can be gleaned from the statements a particular report features or omits.

[3] Petitioners' objection that the declarations do not describe the particular harm that would result from the disclosure of each specific piece of information that would be affected by this motion, *see* Petitioners' Opposition at 9 *and* Opposition to Motion to Amend Protective Order at 3, is likewise without merit.  To present document-specific information as to the myriad documents in over two-hundred cases in support of this global motion to amend the protective order is neither workable nor necessary.  It is the need to allow time for those with the necessary expertise to undertake this document-by-document analysis that compels respondents to seek this relief in the first instance.

*States*, 449 U.S. 383, 399 (1981) (quoting Hickman v. Taylor, 329 U.S. 495, 513 (1947)) (emphasis added).  Here, as discussed in the Clapper, Wells, and Hilton Declarations, the potential revelation concerns not attorneys' mental processes, but sensitive national security information.

Notwithstanding the risk that sensitive national security information may be revealed to detainees, petitioners argue that no "disclosure" occurs in the situation addressed by the Motion to Amend.  In support of that argument, petitioners present two declarations from retired government agents discussing the definition of "disclosure" and the practices they have observed during their careers.  *See* Declaration of Arthur Brown, attached as Exhibit A to Petitioners' Opposition ("Brown Decl."); *and* Declaration of Stephen Abraham, attached as Exhibit B to Petitioners' Opposition ("Abraham Decl."). But neither of those declarations addresses the disclosures at issue in the Motion to Amend, wherein detainees would be provided excerpts of sensitive government documents, over the government's objection.  Instead, both declarations opine that "repeating of a detainee's statements back to him" is not "disclosure."  Abraham Decl. ¶ 6; Brown Decl. ¶ 3 ("[r]epeating a source's statements back to him/her was never considered a matter of 'disclosure'").  While the Abraham Declaration provides no basis for the opinion provided therein, other than a vague reference to the declarant's "experience," Abraham Decl. ¶ 6, the Brown Declaration grounds this assertion in the practice of government agents asking follow-up questions of a source, using selected portions of that source's statements.  Brown Decl. ¶¶ 3-5.

The disclosure at issue here—i.e., allowing a third party to reveal the contents of classified documents to petitioners without the consent of the agency responsible for the security of that information—does not constitute "repeating information back to its

source" during the course of an interview and bears no resemblance to the interrogation setting. Most importantly, when a *government agent* conducts an interrogation and decides it is appropriate to ask follow up questions, any follow up questions and information they may convey, are—by definition—presented to the detainee with the consent of the government. In that setting, the agent with the requisite expertise regarding the subject area at issue will have determined that asking a particular question or making a particular statement to a source does not pose a risk to national security. In the Motion to Amend, the government is only seeking to have a similar process applied with respect to the information at issue in these proceedings.

Importantly, neither the Brown Declaration nor the Abraham Declaration states that it would be appropriate for persons with no expertise in the relevant areas to excerpt portions of classified materials, and present those excerpts to someone without the requisite clearance, much less to someone detained during an armed conflict. Nor does either declarant state that he has observed such a practice during his over twenty-year service as a government agent. The reason for the omission is plain—such a practice is unprecedented, and would represent a drastic departure from the well-established principle that "the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988) (internal quotation omitted) (emphasizing that "[c]ertainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment . . . [n]or can such [an outside nonexpert] body determine what constitutes an acceptable margin of error in assessing the potential risk"). In contrast, the practice that *is* addressed by Petitioners' Opposition—asking follow-up questions in the context of an interrogation—is neither

controversial nor at issue here.  Indeed, as discussed above, the proposed amendments to the Protective Order and Counsel Access Procedures specifically permit counsel to discuss information learned from a detainee with that detainee, and, therefore, to ask follow up questions regarding that information.

Respondents also are not arguing that counsel should never be allowed to discuss the information at issue here with petitioners.  Rather, respondents are only asking the Court to allow the appropriate experts to review the information to be disclosed and ensure that any disclosure does not pose a risk of harm to national security.  Petitioners' argument that this review could more quickly be conducted by the Privilege Review Team, *see* Petitioners' Opposition at 11 and Opposition to Motion to Amend Protective Order at 2, ignores the Supreme Court's direction in *Boumediene v. Bush* that "the Government has a legitimate interest in protecting sources and methods of intelligence gathering," and district courts must "accommodate this interest to the greatest extent possible."  128 S. Ct. 2229, 2276.  Further, Petitioners' assumption that the Privilege Review Team's review will proceed at a faster pace ignores the reality that the Privilege Review Team lacks of expertise to undertake the review contemplated in the Court's orders.  That body was formed under the Protective Order to perform other functions such as reviewing attorney meeting notes and inspecting legal mail for contraband, and is already fully occupied with those tasks.  *See* Counsel Access Procedures ¶¶ 6, 12.  The Declassification Review Team, on the other hand, was specifically constituted to address classification issues arising in this litigation.  Even since respondents submitted their Motion to Amend, the Team has reviewed and cleared thousands of additional documents for release, and the Team's efforts to provide petitioners information as soon as practicable are continuing apace.  This Court should allow this declassification review

process to run its course, and amend the Protective Order and Counsel Access Procedures to ensure that any information approved for release is cleared by a body with the necessary constitutional authority and national security expertise.

## CONCLUSION

For all of these reasons, and for the reasons discussed in the Motion to Amend, the Court should grant respondents' motion.

Dated: May 22, 2009                                    Respectfully submitted,

                                      TONY WEST
                                      Assistant Attorney General

                                      JOSEPH H. HUNT (D.C. Bar No. 431134)
                                      Director, Federal Programs Branch

                                      */s/ Julia Berman*
                                      ANDREW I. WARDEN
                                      PAUL E. AHERN
                                      JULIA A. BERMAN (D.C. Bar No. 986228)
                                      Attorneys
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      20 Massachusetts Avenue, N.W.
                                      Washington, D.C. 20530
                                      Tel: (202) 616-8480
                                      Fax: (202) 616-8470
                                      Email: julia.berman@usdoj.gov
                                      Attorneys for Respondents