**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE:<br><br>**GUANTANAMO BAY DETAINEE LITIGATION** | Misc. No. 08-0442 (TFH)<br><br>Civil Action Nos.<br><br>02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1194, 04-cv-1254, 04-cv-1937, 04-cv-2022, 04-cv-2046, 04-cv-2215, 05-cv-0023, 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359, 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569, 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877, 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994, 05-cv-0999, 05-cv-1048, 05-cv-1124, 05-cv-1189, 05-cv-1220, 05-cv-1244, 05-cv-1347, 05-cv-1353, 05-cv-1429, 05-cv-1457, 05-cv-1487, 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1506, 05-cv-1555, 05-cv-1592, 05-cv-1601, 05-cv-1607, 05-cv-1623, 05-cv-1638, 05-cv-1645, 05-cv-1646, 05-cv-1678, 05-cv-1971, 05-cv-1983, 05-cv-2088, 05-cv-2104, 05-cv-2185, 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367, 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380, 05-cv-2384, 05-cv-2385, 05-cv-2386, 05-cv-2387, 05-cv-2479, 06-cv-1668, 06-cv-1684, 06-cv-1690, 06-cv-1758, 06-cv-1761, 06-cv-1765, 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338, 08-cv-0987, 08-cv-1101, 08-cv-1153, 08-cv-1207, 08-cv-1221, 08-cv-1224, 08-cv-1228, 08-cv-1230, 08-cv-1232, 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238, 08-cv-1360, 08-cv-1440, 08-cv-1789, 08-cv-1805, 08-cv-1828, 08-cv-1923, 08-cv-2019, 08-cv-2083, 09-cv-0745 |

## **MEMORANDUM OPINION**

Pending before the Court is the government's Motion to Confirm Designation of Unclassified Factual Returns as "Protected." The government seeks to seal every unclassified factual return disclosed in the above-captioned cases. Petitioners respond that the government's broad request usurps the Court's discretion to seal judicial records. Multiple press organizations, having been granted a right to intervene for the limited purpose of opposing the motion, aver that the government's request violates the public's right to access judicial records under the First Amendment and common law. Upon consideration of the motion, petitioners' opposition, the press's opposition, and the government's replies, the Court

denies the motion without prejudice.

## I. Factual Background

Tasked by the Supreme Court with balancing the government's "interest in protecting sources and methods of intelligence gathering" against a detainee's need "to find or present evidence to challenge the Government's case against him," *Boumediene v. Bush*, 128 S.Ct. 2229, 2269, 2276 (2008), the Court implemented a Protective Order governing the storage, handling and control of documents and information in the cases of detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo Bay").  The Protective Order covers both classified and unclassified information.[1]  Recognizing that some unclassified information, if publicly disclosed, may pose a threat to national security, the Protective Order permits the government to ask the Court to designate unclassified information as "protected," thereby shielding such information from the public. *See* September 11, 2008, Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba (Dkt. No. 409, 08-mc-0442) ("Protective Order") ¶ 35.  The Protective Order instructs that the ultimate decision to deem information protected is left to the Court:

> Should government counsel in these consolidated cases wish to have the Court deem any document or information "protected," government counsel shall disclose the information to qualified counsel for petitioners—i.e., counsel who have satisfied the necessary prerequisites of this Protective Order for the viewing of protected information—and attempt to reach an agreement about the designation of the information prior to filing a motion with the Court. Petitioners' counsel shall treat such disclosed information as protected unless and until the Court rules that

---

[1] The Protective Order defines "classified information" is as "any classified document or information that was classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order." Protective Order ¶ 8a.

the information should not be designated as protected.

Protective Order ¶ 34.

Following this procedure, on December 29, 2008, the government filed a motion requesting that the Court "confirm designation of the Unclassified Factual Returns served on petitioners' counsel" through January as protected. Respondents' Motion to Confirm Designation of Unclassified Factual Returns as "Protected" (Dkt. No. 1416, 08-mc-0442) ("Gov't Mot."). The government has subsequently filed identical motions to protect every unclassified factual return filed after January in the above-captioned cases.[2] The unclassified returns are the unclassified versions of the classified factual returns, which contain "the factual basis upon which [the government] is detaining the petitioner." Case Management Order (Dkt. No. 940, 08-mc-0442) (Nov. 6, 2008) 1. According to the government, due to the expedited pace of the review to develop unclassified returns, "inadvertent errors" were made — in other words, classified information was released in the unclassified returns. Gov't Mot. 6-8. Complicating matters, the government is unaware of how much classified information is contained in the unclassified returns. The government stresses that its concern is the "totality" of the classified information that would be publicly disclosed, as opposed to the risk of disclosing any specific document. *Id.* at 6. The government requests that the Court designate the returns protected until it can "produce versions of the returns that may be publicly disclosed." *Id.* at 2. The motion does not provide a date as to when such versions will be

---

[2] To the Court's knowledge, the government filed a motion to confirm the designation of unclassified factual returns as protected in every case where it provided an unclassified factual return to a petitioner's counsel. *See, e.g.*, *In re Guantanamo Bay Detainee Litig.*, Misc. No. 08-0442 (TFH) (Dkt. Nos. 1416, 1426, 1677). This memorandum opinion and accompanying order cover all such motions in cases consolidated for purposes of coordination and management in Misc. No. 08-0442.

produced.

Pursuant to the Court's December 30, 2009 Minute Order, petitioners filed a consolidated opposition to the government's motion on January 7, 2009. Petitioners characterize the government's motion as a request for a "blanket designation" of the unclassified returns as protected. *See* Petitioners' Opposition to Respondents' Motion to Confirm Designation of Unclassified Factual Returns as "Protected" ("Pet'rs Opp.") 2. The D.C. Circuit, petitioners claim, has denied similar blanket government requests to protect unclassified information. *Id.*

While the government's motion was pending, on January 14, 2009, the Associated Press, New York Times Company, and USA Today (collectively "press intervenors" or "press") filed a motion to intervene for the limited purpose of opposing the government's motion. Independent of petitioners' objections, the press claim that the First Amendment and common law afford the public a qualified right of access to the unclassified factual returns.

On March 26, 2009, the Court held a motions hearing on the government's motion and the press's motion to intervene. The Court heard oral argument from the government, petitioners, and the press. With respect to the press's motion to intervene, the D.C. Circuit has liberally interpreted Fed. R. Civ. P. 24 to permit third parties to permissively intervene "for the limited purpose of seeking access to materials that have been shielded from public view either by seal or by protective order." *E.E.O.C. v. Nat'l Children's Ctr. Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); *see also In re Vitamins Antitrust Litig.*, 2001 WL 34088808, at *2 (D.D.C. Mar. 19, 2001) (Hogan, J.). For reasons set forth during the hearing, on April 2, 2009, the Court granted by Minute Order the press's motion, permitting them to intervene for the limited purpose of opposing the government's motion before this Court.

Having granted the press a limited right to intervene in this matter, the Court's decision on the government's motion must address both petitioners' opposition and that of the press. As explained below, the Court concludes that both parties' oppositions are meritorious.

## II.     Court Discretion to Seal Judicial Records

The D.C. Circuit has twice considered and denied government attempts to broadly designate as protected unclassified information on detainees at Guantanamo Bay. Before the Court can grant a motion to protect unclassified information, the government must identify by line the information it seeks to protect.

The D.C. Circuit first considered a government attempt to designate unclassified information as protected in *Bismullah v. Gates,* 501 F.3d 178, 187-88 (D.C. Cir. 2007), *vacated* 128 S.Ct. 2960 (2008), *reinstated*, Order, No. 06-1197 (D.C. Cir. Aug. 22, 2008), *petitions dismissed for lack of jurisdiction*, 551 F.3d 1068 (D.C. Cir. 2009).[3] In *Bismullah*, the D.C. Circuit entered a protective order to assist with its review of the Combatant Status Review Tribunal (CSRT) enemy combatant determinations. The government proposed that it be permitted to unilaterally determine whether unclassified information is protected, and therefore kept under seal. *Id.* at 188. In rejecting the government's proposal, the Circuit instructed that

> *It is the court, not the Government, that has discretion to seal a judicial record, which the public ordinarily has the right to inspect and copy*. Therefore, insofar as a party seeks to file with the court nonclassified information the Government believes should be 'protected,' the Government must give the court a basis for withholding

---

[3] The D.C. Circuit subsequently dismissed the petitions in *Bismullah* for lack of jurisdiction in light of *Boumediene*. However, the D.C. Circuit did not overrule its decision with respect to procedures for handling classified and unclassified information for the detainees at Guantanamo Bay, and initially reinstated those procedures following *Boumediene*. *Bismullah v. Gates*, 551 F.3d 1068, 1070 (D.C. Cir. 2009). Therefore, this Court will follow the D.C. Circuit's guidance in *Bismullah* with respect to handling such information.

it from public view.

*Id.* (citations omitted) (emphasis added).

Following the D.C. Circuit's opinion in *Bismullah*, the government filed a motion to designate two categories of unclassified information as protected:[4] the names of United States government personnel and any "Law Enforcement Sensitive" information. *Parhat v. Gates,* 532 F.3d 834, 851-52 (D.C. Cir. 2008).[5] The government argued that disclosing the names of government personnel could jeopardize their safety, and disclosing "Law Enforcement Sensitive" information could harm the global war on terrorism. *Id.*

The D.C. Circuit denied the government's motion, in *Parhat v. Gates*,[6] admonishing that its request was overly broad. As the Circuit explained, the government "relies solely on spare, generic assertions of the need to protect information in the two categories it identifies. The government does not 'give the court a basis for withholding' that is specific to the information it has designated in this case." *Id.* at 852-53 (citing *Bismullah*, 501 F.3d at 188). Without an "explanation tailored to the specific information at issue," the Circuit continued, it had "no way

---

[4] The Circuit's protective order, which mirrors this Court's Protective Order, defined "protected information" as "any . . . information deemed by the court, either upon application by the Government or sua sponte, to require special precautions in storage, handling, and control, in order to protect the security of the United States Government personnel or facilities, or other significant government interests." *Bismullah*, 501 F.3d at 196. The order directs the government to "apply to the court to deem any information 'protected.' . . . Such information must be maintained under seal unless and until the court determines the information should not be designated as 'protected.'" *Id.* at 201.

[5] Resembling its broad request in the instant case, the government filed motions to designate as protected these two categories of information in "over one hundred pending [Detainee Treatment Act] cases." *Parhat*, 532 F.3d 834 at 852.

[6] The D.C. Circuit's decision in *Parhat* with respect to handling classified and unclassified information has not been overruled, and will be followed by this Court. *See supra* n.3.

6

to determine whether [the information] warrants protections – other than to accept the government's own designation," which would usurp the Circuit's discretion to seal a judicial record. *Id.* at 853. Though accepting that there are names of government personnel and "Law Enforcement Sensitive" information that should be sealed, the Circuit clarified that some of the information was publicly available and therefore did not warrant "protected status." *Id.* Nevertheless, the Circuit denied the motion with prejudice, allowing the government another opportunity to seal the information. The government was directed to file, within thirty days, a renewed motion accompanied by a marked copy of the detainee's CSRT record indicating for which information the government sought protected status. *Id.* During the pendency of the renewed motion, the contested information was to remain under seal. *Id.*

Drawing on these precedents, the Court finds that the government has again failed to provide a court with a sufficient "basis for withholding" the unclassified information in these cases. The D.C. Circuit in *Parhat* was unequivocal that requests to designate information as protected require specificity. The government's motion is devoid of specificity. Indeed, the government pleads with even greater generality then it did in *Parhat*, requesting that all information in the returns be sealed instead of just two categories of information. The government warns that disclosing the unclassified returns could "pose a threat to the security of the United States." Gov't Mot. 8. The Court does not see how such a "spare, generic assertion" differs from the assertion rejected by the D.C. Circuit – that disclosing "Law Enforcement Sensitive" information could harm the global war on terrorism. *Parhat*, 532 F.3d at 852. At a minimum, the specificity required by the D.C. Circuit precludes the government from seeking to designate as protected information that is already in the public domain. *See id.* at 853. Yet the government concedes that some information in the unclassified returns has already been

7

disclosed to the public. *See* Reply by Respondents in Support of Motion to Confirm Designation of Unclassified Factual Returns as "Protected" (Dkt. No. 1503, 08-mc-0442) ("Gov't Reply") 4.

Although unpersuaded by the government's request, the Court is also not convinced that the government's failure to plead with specificity mandates that it immediately identify specific information to protect or release the unclassified returns, as petitioners demand. Petitioners do not contest that the unclassified returns may contain classified information. Abiding by the Supreme Court's directive in *Boumediene* to accommodate the government's "legitimate interest in protecting sources and methods of intelligence gathering" to the "greatest extent possible," *Boumediene*, 128 S.Ct. at 2276, the Court exercises its discretion to provide the government with sufficient time to review the returns to prevent the dissemination of classified information. In choosing a deadline for the public filing of the factual returns in the above-captioned cases, the Court accepts the government's claim that dedicating resources to declassify[7] every unclassified factual return would impede more pressing classification requests in these habeas proceedings. For example, the government represents that "the resources required for production of unclassified versions of the factual returns are the same resources required for production of new factual returns." Gov't Mot. 7. Of course, since the government has filed every classified factual return required by the Court and all but a few of the required unclassified returns, the government now has greater resources available to complete a declassification review of the returns.

The Court's decision is also influenced by the fact that petitioners will not be harmed if public disclosure of the factual returns is delayed. Though the unclassified returns have been

---

[7] According to the government, a review to declassify the factual returns would better ensure that the returns do not contain classified materials. Gov't Mot. 4 n.8.

presumptively protected during the pendency of the motion, the government has permitted petitioners to have access to them. Potential witnesses and experts for petitioners have also had access to the unclassified returns, provided they signed and returned the Acknowledgment.[8] Petitioners posit that some witnesses may be dissuaded from participating in the case due to logistical difficulties receiving or signing the Acknowledgment or fear from subjecting themselves to the authority of the United States. Pet'rs Opp. 10. The Court rejects any assertion that, in this advanced technological age, petitioners cannot exchange documents with potential witnesses. The Court also fails to see how requiring third parties to sign the Acknowledgment, and thus agree "not to use or disclose any protected information or documents,"[9] harms petitioners. To the contrary, ensuring third-party compliance with the Protective Order allows those third parties assisting petitioners to handle sensitive information while accommodating the government's "legitimate interest" in protecting such information.

With these considerations in mind, the Court elects to follow the approach crafted in *Parhat*. *See Parhat*, 532 F.3d at 853. Accordingly, the government's motion is denied without prejudice. On or before July 29, 2009, for each petitioner in the above-captioned cases,[10] the government is directed to either (i) publicly file a declassified or unclassified

---

[8] The Protective Order mandates that petitioners' counsel sign an Acknowledgment form in order to have access to protected information. The Acknowledgment states that the undersigned agrees to be bound by the terms of the Protective Order and "not to use or disclose any protected information or documents." Protective Order, Exh. B.

[9] Protective Order, Exh. B.

[10] This opinion and accompanying order do not apply to petitions that are stayed or to any petitioner who consented to the motion. The government represents that petitioner Tariq Mahmoud Alsawam (ISN 535), Civil Action No. 05-1244 (CKK), agreed to the designation of his unclassified factual return as protected. Gov't Reply 1 n.1.

factual return[11] or (ii) file under seal with the petitioner's counsel and the appropriate Merits Judge an unclassified factual return highlighting with a colored marker the exact words or lines the government seeks to be deemed protected, as well as a memorandum explaining why each word or line should be protected.[12] If the government chooses to file a highlighted factual return under seal, the parties must first meet and confer pursuant to Local Rule of Civil Procedure 7(m); if an agreement cannot be reached, the government must file with the appropriate Merits Judge a motion to designate as protected each highlighted portion of the return. Until July 29, 2009, the unclassified factual returns are to remain protected, except that each petitioner shall have access to the unclassified factual return pertaining to himself, and counsel may disclose the unclassified factual return to the petitioner's witnesses and experts who have signed the Acknowledgment. If the government does not file an unprotected or highlighted factual return for a petitioner by July 29, 2009, that petitioner's unclassified factual return will be treated as unprotected, unless the appropriate Merits Judge rules to the contrary. In cases in which the government has not yet provided petitioner's counsel with an unclassified factual return, the government shall comply with this opinion within sixty days of the date on which the government provides the unclassified return.

---

[11] "An 'unclassified' return is one in which all classified information has been redacted. These have been prepared as a preliminary measure to provide information to the detainees as quickly as possible. A 'declassified' return is one in which formerly classified information has been determined by authorized declassification officials to no longer require security classification." Gov't Mot. 4 n.8.

[12] Guiding the Court's decision is Judge Joyce Hens Green's order regarding a government motion to designate as protected all unclassified material contained in the factual returns pursuant to the previous protective order that governed these habeas corpus proceedings. Judge Green, who authored that protective order, instructed the government to "highlight[] with a colored marker the exact words or information in each factual return the respondents seek to be deemed 'protected.'" Order (Dkt. No. 138, 02-cv-0299) (Dec. 8, 2004).

### III. Right of Public Access to Judicial Records

Press intervenors argue that both the First Amendment and common law afford the public a qualified right to access the unclassified factual returns filed in these habeas proceedings. Their underlying claim, that the public has a right to access filings in habeas proceedings, is a matter of first impression in this Circuit. For the reasons that follow, the Court agrees with press intervenors.

#### A. First Amendment

The First Amendment protects public access to court records and proceedings if the court determines that such access (i) has historically been available and (ii) "plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) ("*Press-Enterprise II*"). Both of these questions "must be answered affirmatively before a constitutional requirement of access can be imposed." *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985). The right of access is qualified, however. If a court determines that there is a First Amendment right of access to certain documents, the government may overcome that right by demonstrating "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*").

#### A. <u>Historic Availability of Public Access</u>

Press intervenors seek access to documents filed in habeas proceedings. As evidenced by the filings of both the press and the government, the case law is bereft of analysis regarding

11

whether public access to habeas proceedings has historically been available.[13] Although it appears that no Circuit has addressed the question with respect to habeas proceedings specifically, multiple Circuits have analyzed the question with respect to civil proceedings generally. A petition for a writ of habeas corpus is a civil proceeding. *See, e.g., Fay v. Noia*, 372 U.S. 391, 423 (1963) (commenting that a writ of habeas corpus is a "civil remedy for the enforcement of the right to personal liberty, rather than" a criminal proceeding). In navigating these First Amendment waters, the Court will therefore follow the direction provided by the Circuits with respect to civil proceedings.

The D.C. Circuit has neither recognized nor rejected that the First Amendment affords the public a right of access to civil proceedings. The government interprets the D.C. Circuit's silence as a denial of the right. Quoting *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, the government argues that the D.C. Circuit has never "indicated that it would apply the [First Amendment right-of-public-access] test to anything other than criminal judicial proceedings." 331 F.3d 918, 935 (D.C. Cir. 2003). In *Ctr. for Nat'l Sec. Studies*, however, the third party was not seeking access to judicial records in civil proceedings; rather, it sought Department of Justice investigation information on individuals detained for immigration violations. 331 F.3d at 934-35 (holding that the First Amendment right of public access "does not extend to non-judicial documents" compiled during an Executive Branch investigation). The Court is unaware of any D.C. Circuit opinion holding that there is no First Amendment right to access

---

[13] Press intervernors cite to two district court opinions that ostensibly recognize a right of access to habeas proceedings. *Osband v. Ayers*, 2007 WL 3096113, at *2-3 (E.D. Cal. Oct. 22, 2007); *Ramirez v. Attorney Gen. of the State of New York*, 1999 WL 1059966, at *1-2 (S.D.N.Y. Nov. 22, 1999). Both opinions lack substantive analysis on the First Amendment right-of-public-access test and do not address whether there has been a history of such access. Notably, neither the press nor the government cites to a single Circuit opinion addressing the issue of access in habeas cases.

documents in civil proceedings.

While the D.C. Circuit has been silent on the issue, other Circuits have opined and uniformly held that the public has a First Amendment right of access to civil proceedings and records. *See Lugosch v. Pyramid Co.*, 435 F.3d 110, 124-27 (2d Cir. 2006) (holding that the First Amendment secures for the public and the press a right of access to civil proceedings); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-70 (3d Cir. 1984) ("the public and press possess a First Amendment . . . right of access to civil proceedings"); *Rushford v. New York Magazine*, 846 F.2d 249, 253 (4th Cir. 1988) ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case."); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1175, 1178-79 (6th Cir. 1983) ("[t]he historical support for access to criminal trials applies in equal measure to civil trials"); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("the policy reasons for granting public access to criminal proceedings apply to civil cases as well"); *see also Nat'l Assoc. of Waterfront Employers v. Chao*, 587 F. Supp. 2d 90, 98 (D.D.C. 2008) (Collyer, J.) ("Courts have found a legitimate public interest in access to civil trials as well."). According to these Circuits, "[t]he public's right of access to civil trials and records is as well established as that of criminal proceedings and records." *Publicker*, 733 F.2d at 1066. A tradition of public access to civil trials can be traced throughout our legal history – from English common law to the American colonies to Justice Oliver Wendell Holmes. *See id.* at 1068-1070; *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.16 (1979) (Stewart, J.) ("English commentators also assumed that the common-law rule was that the public could attend civil and criminal trials without distinguishing between the two. The experience in the American Colonies was analogous. From the beginning, the norm was open trials.") (citations omitted); *Cowley v.*

13

*Pulsifer*, 137 Mass. 392, 394 (Mass. 1884) (Holmes, J.) ("[i]t is desirable that the trial of [civil] causes should take place under the public eye").

The Supreme Court has also signaled that the public has a right of access to civil proceedings. In the seminal case *Richmond Newspapers Inc. v. Virginia*, the Supreme Court held that the First Amendment guarantees the public a right of access to criminal trials. 448 U.S. 555, 580 (1980). Though the question of access to civil trials was not raised in the case, the Court noted "that historically both civil and criminal trials have been presumptively open." *Id.* at 580 n.17. Justice Potter Stewart, concurring, declared that "the First and Fourteenth Amendments clearly give the press and the public a right of access to trials themselves, civil as well as criminal." *Id.* at 599.

The consensus of the Circuits is that there has been a history of public access to civil proceedings. The Supreme Court has recognized such a history, albeit in dicta. In accord with the opinions of these appellate courts, the Court concludes that access to habeas proceedings has been historically available.

B. <u>Significant Positive Role of Public Access</u>

The Court is also convinced that "public access plays a significant positive role in the functioning" of these habeas proceedings. *See Press-Enterprise II*, 478 U.S. at 8. In general, opening the judicial process ensures actual fairness as well as the appearance of fairness. *Press-Enterprise I*, 464 U.S. at 508. In these proceedings, the need for openness is no less compelling.

The Supreme Court granted each detainee a right to petition this Court for a writ of habeas corpus in order "to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene*, 128 S.Ct. at 2266. Over seven months after the *Boumediene* decision, the President created a Guantanamo Review Task Force

("Task Force") to determine the proper disposition of each detainee. Executive Order No. 13,492, § 4, 74 Fed. Reg. 4897 (Jan. 27, 2009). While the detainees await the findings of the Task Force, filing a petition for a writ of habeas corpus remains the only official vehicle for a detainee to challenge the government's decision to detain him. These proceedings thus remain of critical importance and relevance. *See Boumediene*, 128 S.Ct. at 2277 ("Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person. Some of these petitioners have been in custody for six years with no definitive judicial determination as to the legality of their detention. Their access to the writ is a necessity to determine the lawfulness of their status, even if, in the end, they do not obtain the relief they seek.").

As for the factual returns, they are fundamental to these proceedings. The factual returns detail what the detainees are accused of doing and who they are accused of being. They are the basis on which the government justifies each petitioners' detention.

Public interest in Guantanamo Bay generally and these proceedings specifically has been unwavering. The public's understanding of the proceedings, however, is incomplete without the factual returns. Publicly disclosing the factual returns would enlighten the citizenry and improve perceptions of the proceedings' fairness. *Cf. New York Times Co. v. United States*, 403 U.S. 713, 728 (1971) (Stewart, J., concurring) (observing that in the areas of national defense and international relations, "the only effective restraint upon executive policy and power . . . may lie in an enlightened citizenry"). Disclosing the factual returns to the public would also benefit both parties. Greater public access would facilitate third-party assistance for petitioners. The government's detention decisions would gain the legitimacy that accompanies transparency.

15

Although the Court finds that providing the returns to the public would play a "significant positive role" in these proceedings, its conclusion is conditional. First, any positive role would be severely diminished if the public gains access to classified information. At this time, the Court chooses not to question, generally, government determinations that providing classified information to the public would cause serious damage to national security. Second, the benefits of public access to the returns would be tempered if providing the returns to the public interferes with petitioners' prosecution of these petitions. To the extent the government's efforts to declassify the factual returns for the public prevent it from declassifying information for petitioners, providing the returns to the public will no longer play a positive role in these proceedings. Such interference could occur if the government expends resources declassifying factual returns in cases where petitioners do not currently need or have not requested unprotected returns. Third, public access to the returns would negatively impact these proceedings if providing the public with access consumes substantial Court resources.

    C.    <u>Compelling Government Interest</u>

With both prongs of the First Amendment right-of-public-access test satisfied, the Court concludes that the public has a First Amendment right to access the factual returns in these habeas proceedings. The First Amendment right of access, however, is not absolute. *See In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 90 (D.D.C. 2008). If the government can show that keeping the returns sealed is "essential to preserve higher values" and "narrowly tailored," then the returns will remain protected. *Press-Enterprise I*, 464 U.S. at 510; *see also In re Application of New York Times*, 585 F. Supp. 2d at 90 ("the government has the burden of showing that it has a compelling interest in keeping the materials secret"). In this case, the government fails to meet this burden.

The government avers that disclosing the returns to the public "would cause damage to national security." Respondents' Response to Press Applicants' Motion to Intervene (Dkt. No. 1567, 08-mc-0442) 7. Certainly protecting national security is a "higher value." Prohibiting public access to every document in every factual return, however, including information already in the public domain, is not "essential" to achieve this interest. The circumstances in the instant case are distinct from a government request to protect specific classified information. The government concedes that it is capable of screening the returns to identify classified material that could harm national security if publicly released. Therefore, it is not essential for the government to seal completely every return to protect national security. For this very reason, the government's request is also not narrowly tailored. Not only does the government's request sweep as broadly as possible, but it also fails to commit to any deadline by which the unclassified information will be provided to the public.

Therefore, the Court finds that under the First Amendment the public has a limited right to access the unclassified factual returns in these habeas proceedings. In light of the Court's decision with respect to petitioners' opposition, this finding only affects factual returns for a few petitioners.[14] In such cases, the press may file, on or after September 29, 2009, a motion before the appropriate Merits Judge requesting an unprotected factual return.[15] The government must then either (i) publicly file a declassified or unclassified factual return for the petitioner or (ii) file under seal with the appropriate Merits Judge an unclassified factual return for the petitioner highlighting with a colored marker the exact words or lines the government seeks to be deemed

---

[14] For example, petitioners who have chosen or later choose not to seek an unprotected factual return.

[15] At this time, the press may not file such a motion to access the factual returns of petitioners whose petitions are stayed.

17

protected, as well as a memorandum explaining why each word or line should be protected. If the government chooses to file a highlighted factual return under seal, the appropriate Merits Judge will determine whether to designate each highlighted portion of the return as protected. In cases in which the government has not yet provided petitioner's counsel with an unclassified factual return, the press may file such a motion any time after 120 days have passed since the date on which the government provides the unclassified return. The Court believes this four-month delay will obviate any concerns about the public's exercise of its limited right interfering with the petitioners' prosecution of their petitions.

### B.     Common Law

In addition to its conclusions that press intervenors prevail under the First Amendment, the Court finds in the alternative that the press prevail under the common law.[16]

The common law right of access to judicial proceedings is "largely controlled by the second of the First Amendment criteria" – whether access provides a significant positive role in the functioning of the proceedings.[17] *El-Sayegh v. United States,* 131 F.3d 158, 161 (D.C. Cir.

---

[16] The Court recognizes that it is unusual to rule on the constitutional question when the case can be resolved on common law grounds. However, this is how the D.C. Circuit has directed courts to "proceed when a party claims that there is both a common law right of access and a constitutional right of access under the First Amendment." *In re Application of New York Times*, 585 F. Supp. 2d at 87 n.3. In a case before the D.C. Circuit involving a claim of access under both theories, the Circuit only reached the constitutional issue "because of the different and heightened protections of access that the first amendment provides over common law rights." *Wash. Post*, 935 F.2d at 288 n.7.

[17] In *El-Sayegh*, the D.C. Circuit refers to the "second of First Amendment criteria" as "the utility of access as a means of assuring public monitoring of judicial or prosecutorial misconduct." *El-Sayegh,* 131 F.3d at 161. The more common standard is the one cited in this opinion — whether access plays a positive role in the functioning of the proceeding. *See, e.g., In re Reporters Committee*, 773 F.2d at 1336. The Court discerns no distinction in the application or meaning of the two standards. In any event, the Court's conclusion is the same

1997). As discussed *supra*, this criterion weighs in the favor of press intervenors. The issue of what to do with the detainees at Guantanamo Bay remains a source of great public interest and debate. Providing the public with access to the charges levied against these detainees, as detailed in the factual returns, ensures greater oversight of the detentions and these proceedings. As long as public access does not come at the expense of the litigation interests of petitioners or national security, the Court believes the public has a common law right to access the returns.

**IV.    Conclusion**

For the reasons set forth in this opinion, the government's motion is denied without prejudice. The government's motion attempts to usurp the Court's discretion to seal judicial records. Moreover, the public has a limited First Amendment and common law right to access the unclassified factual returns. For each petitioner, the government must either publicly file a factual return or file under seal a marked copy of the unclassified factual return highlighting the specific information for which it seeks protected status.

An order accompanies this memorandum opinion.

June 1, 2009

/s/
Thomas F. Hogan
United States District Judge

---

under either standard.