## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
IN RE:  GUANTANAMO )          Misc. No. 08-442 (TFH)
   BAY DETAINEE )
   LITIGATION )          Civil Action Nos.
)
) 02-cv-0828, 04-cv-1136, 04-cv-1164, 04-cv-1937, 04-cv-2022,
) 04-cv-2035, 04-cv-1254, 04-cv-2046, 04-cv-2215, 05-cv-0023,
) 05-cv-0247, 05-cv-0270, 05-cv-0280, 05-cv-0329, 05-cv-0359,
) 05-cv-0392, 05-cv-0492, 05-cv-0520, 05-cv-0526, 05-cv-0569,
) 05-cv-0634, 05-cv-0748, 05-cv-0763, 05-cv-0764, 05-cv-0877,
) 05-cv-0883, 05-cv-0889, 05-cv-0892, 05-cv-0993, 05-cv-0994,
) 05-cv-0998, 05-cv-0999, 05-cv-1048, 05-cv-1189, 05-cv-1124,
) 05-cv-1220, 05-cv-1347, 05-cv-1353, 05-cv-1429, 05-cv-1457,
) 05-cv-1458, 05-cv-1490, 05-cv-1497, 05-cv-1504, 05-cv-1505,
) 05-cv-1506, 05-cv-1509, 05-cv-1555, 05-cv-1592, 05-cv-1601,
) 05-cv-1602, 05-cv-1607, 05-cv-1623, 05-cv-1638, 05-cv-1639,
) 05-cv-1645, 05-cv-1646, 05-cv-1678, 05-cv-1704, 05-cv-1971,
) 05-cv-1983, 05-cv-2010, 05-cv-2088, 05-cv-2104, 05-cv-2185,
) 05-cv-2186, 05-cv-2199, 05-cv-2249, 05-cv-2349, 05-cv-2367,
) 05-cv-2370, 05-cv-2371, 05-cv-2378, 05-cv-2379, 05-cv-2380,
) 05-cv-2381, 05-cv-2385, 05-cv-2444, 05-cv-2479, 06-cv-0618,
) 06-cv-1668, 06-cv-1684, 06-cv-1758, 06-cv-1759, 06-cv-1765,
) 06-cv-1766, 06-cv-1767, 07-cv-1710, 07-cv-2337, 07-cv-2338,
) 08-cv-0987, 08-cv-1101, 08-cv-1104, 08-cv-1153, 08-cv-1185,
) 08-cv-1207, 08-cv-1221, 08-cv-1223, 08-cv-1224, 08-cv-1227,
) 08-cv-1228, 08-cv-1229, 08-cv-1230, 08-cv-1231, 08-cv-1232,
) 08-cv-1233, 08-cv-1235, 08-cv-1236, 08-cv-1237, 08-cv-1238,
) 08-cv-1310, 08-cv-1360, 08-cv-1440, 08-cv-1733, 08-cv-1805,
) 08-cv-2083, 08-cv-1828, 08-cv-1923, 08-cv-2019, 09-cv-0031,
) 05-cv-0765, 05-cv-0886, 05-cv-1234, 05-cv-2348, 06-cv-1725,
) 08-cv-1222, 09-cv-0745, 05-cv-0879, 05-cv-0891, 05-cv-1493,
) 05-cv-1667, 05-cv-1679, 06-cv-1675, 05-cv-1244, 08-cv-0864
)
_____)

## REPLY MEMORANDUM IN SUPPORT OF RESPONDENTS'
## MOTION FOR RECONSIDERATION OF ORDERS REGARDING
## DISCOVERY FROM THE GUANTANAMO REVIEW TASK FORCE
## AND
## MOTION FOR CONSOLIDATED ORDER REGARDING TASK FORCE DISCOVERY

## **INTRODUCTION**[1]/

Respondents' motion for reconsideration and request for a consolidated order regarding

discovery of information compiled by the Guantanamo Review Task Force, raises issues of

substantial importance concerning the increasingly pressing need to achieve a prompt resolution

of these 150 *habeas* cases, while still providing Petitioners a meaningful opportunity to contest

the grounds of their detention, and avoiding burdens on the Task Force itself that could

jeopardize the prospects of ongoing efforts to repatriate or resettle as many of the remaining

Guantanamo detainees as possible.  In lieu of exhaustive searches for discoverable information

possessed by the Task Force that could delay the adjudication of these cases by months, and

imperil the Task Force's ability to complete its critical mission, Respondents have presented a

comprehensive proposal for Task Force discovery that seeks to advance the interests of all

parties, and the Court, in the fair and expeditious resolution of each *habeas* case, and to promote

the efficient use of judicial, governmental, and private resources, while still ensuring that

---

[1]/   This memorandum constitutes Respondents' opposition/reply to Petitioners' Memorandum in Support of Motion To Strike, and in Opposition to, Respondents' Motion for Reconsideration of Orders Regarding Discovery from the Guantanamo Review Task Force (Dkt. No. 1777-2, 08-mc-0442 (TFH)) (hereinafter, "Pet'rs' Mem."), filed in accordance with the Court's Minute Order of May 20, 2009, as well as to two separate oppositions filed prior to the Court's May 20 Order, Petitioner's Cross-Motion for Discovery, *Paracha v. Obama*, No. 04-2022 (PLF) (Dkt. No. 286); Petitioner's Motion to Strike, *Bostan v. Obama*, No. 05-883 (RBW) (Dkt. No. 197), and to petitioner Majid Khan's Motion for Exception To Consolidation Orders and Memorandum in Opposition to Motion for Reconsideration (Dkt. No. 1778, 08-mc-0442 (TFH)).  *See* nn. 4, 7, 8, *infra*.  This memorandum also adequately addresses petitioner Adel Hamlily's Memorandum in Opposition to Respondents' Motion for Reconsideration of this Courts February 27, 2009 Order, *Hamlily v. Obama*, No. 05-0763 (JDB) (Dkt. No. 231).

Terminology used but not otherwise defined herein shall have the same meaning as in the Memorandum of Points and Authorities in Support of Respondents' Motion for Reconsideration of Orders Regarding Discovery from the Guantanamo Review Task Force and Motion for Consolidated Order Regarding Task Force Discovery (Dkt. No. 1755-2, 08-mc-0442(TFH)) (hereinafter, "Resp'ts' Mem.").

Petitioners and the Court have access to the same discoverable information on which the Task Force's decision makers (the Review Panel) base their decisions regarding each petitioner's transfer, release, or other appropriate disposition.

Petitioners do not address – let alone rebut – the reasons why the Court's existing orders regarding Task Force discovery should be reconsidered and withdrawn; the grounds on which they purport to oppose (and move to strike) Respondents' motion are little more than a diversion from the important questions presented here.  Petitioners do not dispute that saddling the Task Force with the burden of identifying exculpatory evidence and other discoverable information in these cases could severely compromise the performance of its crucial function under the President's Executive Order.  They make little effort, and none convincingly, to rebut Respondents' showing that comprehensive discovery of information contained in the Task Force's TF Network database would require a tremendous investment of time and resources, unjustified by the prospect of identifying material information not already made available to Petitioners in one form or another.  They refuse to acknowledge the additional diversion of scarce intelligence resources from ongoing counter-terrorism operations that large-scale discovery of classified Task Force information would entail.  And they fail to identify any shortcomings in Respondents' global proposal for Task Force discovery that would recommend against it.  To the contrary, Petitioners acknowledge that, by sequencing Task Force discovery, Respondents' proposal reduces burdens on everyone – Petitioners, Respondents and the Court – by ensuring that Task Force materials will not be produced, reviewed and analyzed in cases where a transfer or release decision 'negat[es] any need for further habeas proceedings."  Pet'rs' Mem. at 13.

2

Petitioners treat this situation as if it were a garden-variety discovery dispute, focusing on groundless allegations of procedural missteps and rules of procedure that have no bearing on the merits of Respondents' motion or the virtues of Respondents' solution to the question of Task Force discovery. The sole alternative they propose, continued piecemeal litigation of requests for discovery from the Task Force, is not only contrary to the approach that the Court evidently decided upon when it referred Respondents' motion for coordinated consideration by Judge Hogan, it promises only further uncertainty and delay in the determination of these cases, further diversion of governmental resources from ongoing counter-terrorism efforts, and further encroachments upon the autonomy of the Task Force that could threaten the success of a mission that the President has found necessary to the national security and foreign policy interests of the United States. Accordingly, for these reasons, and the reasons presented in Respondents' opening memorandum, Respondents' Motion for Reconsideration and Motion for Consolidated Order Regarding Task Force Discovery should be granted, and Petitioners' cross-motion to strike should be denied.

## ARGUMENT

## I.   PETITIONERS REBUT NONE OF THE GROUNDS ON WHICH RESPONDENTS' MOTION SHOULD BE GRANTED.

### A.   Petitioners Offer No Justification for Imposing Discovery Obligations on the Task Force Itself.

As explained in Respondents' opening memorandum, a number of the Court's recent orders impose discovery obligations upon the Task Force itself. Resp'ts' Mem. at 12-13. Specifically, they require the Task Force to pass on to Respondents for review and production any exculpatory material, or other discoverable evidence, that is "identified" or "discovered" by

the Task Force staff as it conducts its reviews of individual detainees.  *Id.*  Respondents have

shown, however, that obligations of this kind could effectively incapacitate the Task Force, to the

detriment of ongoing efforts to determine the appropriate disposition of each detainee before the

Guantanamo detention facility is closed, and in derogation of the President's authority in the

realm of national security and foreign affairs.  *Id.* at 29-33.  Petitioners present no argument to

the contrary.

The Task Force is operating under extraordinary time constraints, and in close

coordination with ongoing diplomatic efforts by the Department of State, to complete its detainee

reviews in time to close the detention facilities at Guantanamo Bay within the time frame

directed by the President.  *Id.*; *see* Second Olsen Decl.,  ¶¶ 18-27; Exec. Order No. 13,492, 74

Fed. Reg. 4897 (Jan. 22, 2009) ("Executive Order").  The completion of these reviews in

sequence with the State Department's efforts is critical in many cases to the successful transfer or

release of individuals still detained at Guantanamo Bay.  Second Olsen Decl., ¶¶ 26-27.   The

Task Force is not equipped, however, to respond at the same time to the discovery obligations

contemplated by the Court's existing orders, *see id.*, ¶¶ 22-25,  and the consequent diversion of

the Task Force's time, energies, and resources to grapple with these obligations would threaten

the timely completion of its mission, and could delay, or in some cases frustrate entirely, the

prompt and appropriate disposition of detainees – whether by transfer, release, or otherwise – that

the President has directed.  *See* Executive Order, § 4; Resp'ts' Mem. at 31-32.  That outcome, as

Respondents have observed, would be contrary to the interests of all parties involved in these

cases, and inconsonant with the separation of powers.  Resp'ts' Mem. at 32-33.

4

Petitioners do not contest the overriding importance of insulating the Task Force from the burdens of discovery.  Rather, they merely suggest that Respondents may have misread the Court's orders to impose review obligations on the Task Force itself, as opposed to Respondents' Justice Department counsel, and that any confusion could be "readily clarified with the responsible Merits Judge."  Pet'rs' Mem. at 14.  The Court's orders require no clarification, however.  *See, e.g.*, Order Regarding Petitioner's Requests for Additional Discovery, at 7, *Alsawam v. United States*, 05-1244 (CKK) (Dkt. No 158) (directing that "as additional and new information is identified *by the executive review teams* under the Executive Order, such information must be [produced] on a rolling basis") (emphasis added).[2]  The remedy required is to withdraw these orders, so as to relieve the Task Force of potentially debilitating burdens of discovery with which it is not equipped to cope.  Petitioners make no argument to the contrary; indeed, their misguided suggestion that the problem be resolved through "clarification" implicitly concedes that the burdens placed on the Task Force cannot be justified, or easily squared with the separation of powers.  Pet'rs' Mem. at 14.  Thus, Respondents' request for reconsideration of the Court's orders imposing discovery obligations on the Task Force itself must be granted.

**B.      Petitioners Fail To Explain How Comprehensive Searches of Information Compiled by the Task Force Can Be Reconciled With the Objective of Expeditiously Resolving These Cases on the Merits.**

For the reasons explained in Respondents' opening memorandum, the Court should also reconsider and withdraw its orders requiring comprehensive reviews of information compiled by the Task Force – including the approximately 1.8 million pages of documents contained in the

---

[2]   The relevant orders are cited and discussed in Respondents' opening Memorandum. *See* Resp'ts' Mem. at 13, 13 n.3, 29-31 & 31 n.11.

TF Network database – for discoverable information.  Resp'ts' Mem. at 18-29.  The Task Force

is unlikely to possess new and material information in amounts that would warrant the months-

long delays, and tremendous expenditure of government resources, entailed by searching for,

clearing, and producing classified evidence on that scale, especially considering the detainee

information, collected over a period of years by OARDEC and the JIG, that Respondents' *habeas*

counsel have already made available.  *Id.*

Seeking to minimize the predictable burden of comprehensively reviewing and producing

classified information from the TF Network database, Petitioners assert that the outstanding

orders requiring such discovery cover only 34 petitioners, and that to search for and review Task

Force materials regarding those petitioners would require "only 10 days to six or seven weeks."

Pet'rs' Mem. at 12-14.  To the contrary, however, the number of petitioners covered by the

orders in question is between 50 and 55, even taking into account the individual cases where

merits litigation has been suspended due to a transfer or release decision by the Review Panel.

Petitioners also fail to account both for the time needed at the outset, approximately one month,

to reassign or hire 10-20 attorneys with appropriate security clearances to conduct the reviews,

and the time required on the back end, approximately 30-60 days, to clear classified information

for production.

Appropriately taking these realities into account, the time needed in 50-55 cases to

conduct searches for and produce exculpatory information from just the TF Network – without

also searching the additional agency databases to which the Task Force has access, *and* without

also searching for information subject to discovery under §§ I.E.1 and I. E.2 of the Amended

CMO – would take approximately 13 to 23 weeks, or three to five months, to complete.  *See*

Resp'ts' Mem. at 22-29.  Moreover, unless all petitioners who are not covered by existing orders are prepared to foreswear any interest in comprehensive discovery from the TF Network database, then as long as some petitioners are granted unrestricted rights to such discovery, the number seeking such discovery can only be expected to grow, together with the time required to satisfy their demands and the delays in reaching the merits of these cases.[3]

It is important to observe, further, that in seeking to minimize the time required to conduct exhaustive searches of information made available to the Task Force, Petitioners also fail to acknowledge the enormous amount of *additional* time that such searches would require if the Court's existing orders were construed to include the numerous agency databases, apart from the central TF Network database, to which members of the Task Force staff also have access. *See* Resp'ts' Mem. at 26-27.  As Respondents have said, without contradiction by Petitioners, a requirement to search each of these additional databases would correspondingly multiply the time (and resources) needed to complete the discovery process.[4]

---

[3] Petitioners remark, as Respondents have acknowledged, that "'the TF Network database contains information from sources that have not been available to Respondents.'" Pet'rs' Mem. at 22 (quoting Resp'ts' Mem. at 19).  Yet Petitioners do not even attempt to explain, given the ready availability of the detainee information compiled over periods of years by the JIG and OARDEC, how "wide-ranging searches of the TF Network database would [so] significantly enhance the body of material evidence available to petitioners . . . as to justify the costs in time and resources that those searches would impose."  Resp'ts' Mem. at 19.

[4] Counsel for petitioner Paracha offers "to go the office of the Task Force" himself to search the TF Network database for discoverable information regarding his client, Petitioner's Cross-Motion for Discovery, at 3, *Paracha v. Obama*, No. 04-2022 (PLF) (Dkt. No. 286), but even if there were a legal basis under ordinary circumstances to require a party to permit an opposing counsel to search at random among its files for responsive information, it would be impossible to accommodate Paracha's suggestion.  Though his counsel may have a SECRET clearance, a TOP SECRET/SCI clearance would be required even to gain access to the Task Force's secure facility. Perrelli Decl., ¶ 8.

Petitioners also fail in their attempt to trivialize the consequences of conducting additional discovery on this scale for the intelligence agencies that would have to clear classified information for production.  Pet'rs' Mem. at 14.  Petitioners contend that it will be no burden to clear materials of a cumulative or duplicative nature, but overlook (or disregard) the fact that each identified document, regardless of whether the information it contains is cumulative, duplicative, or has already been produced in some other form, must nevertheless be cleared for production by the agency (or agencies) that originated the classified information contained therein.  Resp'ts' Mem. at 26.  The resulting need to clear still larger volumes of documents generated by comprehensive searches of the TF Network database would inevitably impede other pressing requests for clearance of discoverable documents in these proceedings.[5]

More importantly, however, these additional, and perhaps ultimately unnecessary, clearance requirements would compel these agencies to divert further resources from ongoing intelligence-gathering activities and other counter-terrorism operations.  *See* Resp'ts' Mem. at 25-26.  And tight discovery deadlines might not allow for the vetting ordinarily deemed necessary to ensure the protection of sensitive intelligence information, sources, and methods. *See id.* at 25.  In either event, national security could be compromised, a matter of concern that the Court cannot overlook.  *See, e.g., CIA v. Sims*, 471 U.S. 159, 179 (1985) (noting "great

---

[5]   This Court recently noted this precise point in its Memorandum Opinion regarding the government's Motion to Confirm Designation of Unclassified Factual Returns as "Protected." *See In re:  Guantanamo Bay Detainee Litigation*, Misc. No. 08-0442, Memorandum Opinion dated June 1, 2009 (Dkt. No. 1780) (ordering public filing of unclassified factual returns, over a period of two months, while accepting the government's claim that "dedicating resources to declassify every unclassified factual return would impede more pressing classification requests in these habeas proceedings").

deference" owed to the Executive Branch regarding the "unacceptable risk[s] of revealing" protected intelligence information).

Petitioners also attempt to minimize the consequences of allowing Task Force discovery on this scale by pointing out that many petitioners have already been cleared for transfer or release, as will others as the Task Force's work progresses, thus obviating the need for discovery (or other litigation) in those cases.  Pet'rs' Mem. at 13.  That observation merely underscores Respondents' point that, in the interest of conserving both governmental and private resources, and advancing the litigation of these cases as efficiently as possible, the Court should *avoid* ordering comprehensive discovery of information compiled by the Task Force, except perhaps in those cases where the Review Panel has already completed its review of the detainees in question, and disapproved them for transfer, release, or prosecution.  Resp'ts' Mem. at 28-29. For this reason as well, Petitioners have failed to explain why the Court's outstanding orders for discovery of Task Force information should not be reconsidered, in favor of the alternative approach that Respondents have proposed.

      **C.**      **Petitioners Do Not Contest the Benefits of the Global Proposal for Task Force Discovery That Respondents Have Presented.**

Under Respondents' proposal for obtaining detainee information from the Task Force, each petitioner would be given the option of (1) proceeding with his case without discovery from the Task Force, or (2) obtaining discovery of exculpatory or otherwise responsive information that is cited in the recommendation of the Task Force staff regarding the petitioner, after the staff's review of that petitioner is complete.  Resp'ts' Mem. at 14-17.  This proposal, while not

the equivalent of conducting comprehensive searches within the TF Network database, avoids the difficulties inherent in that approach, and offers a number of advantages as well. *Id.*

One significant benefit of this approach, as Respondents have noted, is that it allows the parties and the Court to avoid the resulting inefficiencies if the parties conduct Task Force discovery in the near-term, only to learn afterward that a petitioner has been cleared for release or transfer. Resp'ts' Mem. at 28-29. As Petitioners note, a decision to transfer a detainee "negat[es] any need for further habeas proceedings if the transfers are carried out in a timely manner." Pet'rs' Mem. at 13. Resources conserved in this manner could then be more efficiently deployed to other, more pressing and productive litigation activities.

Second, Respondents' option holds out the possibility that if the Task Force in fact possesses significant pieces of exculpatory information to which Respondents do not have access, they will be disclosed sooner than a comprehensive search of the TF Network database could be performed by *habeas* counsel, and the resulting volume of classified information cleared and produced. Resp'ts' Mem. at 15-16. Finally, Respondents' approach not only ensures relatively expeditious production of discoverable information to the detainee, but also ensures that responsive information on which the Review Panel itself will base its decision regarding the transfer, release, or other disposition of a petitioner will also be available for consideration by the Court as it adjudicates that petitioner's claims. *Id.* at 17.

For each of these reasons, none of which is contested by the Petitioners, Respondents' global proposal represents the best prospect for efficient discovery of information compiled by the Task Force, while promoting the just and expeditious determination of these cases on the

merits, without compromising the Task Force's ability to carry out its duties under the

President's Executive Order.  Petitioners have made no substantive argument to the contrary.

> **D.      Reconsideration of the Court's Orders on Task Force Discovery Is Necessary and Warranted Under the Circumstances Now Known.**

Notwithstanding that the grounds on which Respondents have sought reconsideration

stand unrebutted by the Petitioners in any meaningful way, Petitioners still maintain that

Respondents have demonstrated "no basis" for reconsideration of the Court's orders under Fed.

R. Civ. P. 54(b).   Pet'rs' Mem. at 14-15.  That argument, for which Petitioners offer not a word

of supporting analysis, *see id.*, is groundless.[6]

Under Rule 54(b), "reconsideration of an interlocutory decision is available under the

standard 'as justice requires.'"   *AFL-CIO,* 605 F. Supp. 2d at 257 (internal quotation marks and

citation omitted).  The relevant factors include "whether the court has patently misunderstood a

party, has made a decision outside the adversarial issues presented to the court by the parties, has

made an error not of reasoning, but of apprehension, or whe[ther] a controlling or significant

change in the law or facts has occurred since the submission of the issue to the court."  *Powell v.*

---

[6]   Petitioners also argue at length that Respondents' motion for reconsideration does not meet the standard for amending or altering a final judgment under Fed. R. Civ. P. 59(e), or for vacating a final judgment under Rule 60(b).  Pet'rs' Mem. at 15-19.  This effort is altogether misplaced.  Plainly, the discovery orders at issue are not final judgments, but interlocutory in nature.  Motions for reconsideration of interlocutory orders are governed by Rule 54(b), not Rule 59 or 60, *AFL-CIO v. Bullock,* 605 F. Supp. 2d 251, 257 (D.D.C. 2009); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of America*, 576 F. Supp. 2d 128, 130 (D.D.C. 2008), even if a motion does not identify the particular rule under which it was filed, *see Hamilton v. Geithner,* — F. Supp. 2d — , 2009 WL 1385339, *3 (D.D.C. May 19, 2009); *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129 n.4 (D.D.C. 2008).  The standard for reconsideration under Rule 54 – "as justice requires," *see Hamilton,* 2009 WL 1385339, *3 – is "more flexible" than the "stricter standards" applied under Rules 59(e) and 60(b), *Radtke v. Caschetta*, 2007 WL 2071, *2 (D.D.C. July 17, 2007).  It is therefore irrelevant whether Respondents' motion would satisfy the standards for altering, amending, or vacating a final judgment under Rule 59 or 60.

*Castaneda*, 247 F.R.D. 179, 181 (D.D.C. 2007) (internal quotation marks and citation omitted); *see also Zeigler,* 555 F. Supp. 2d at 129 (noting that a court will grant a motion for reconsideration when the movant demonstrates an intervening change in the law or the discovery of previously unavailable evidence).  "These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining whether reconsideration is necessary under the relevant circumstances."  *Powell*, 247 F.R.D. at 181 (internal quotation marks and citation omitted); *see also AFL-CIO*, 605 F. Supp. 2d at 257.

As Respondents observed in their initial memorandum, and Petitioners do not dispute, the Court issued its orders requiring comprehensive discovery of information in the Task Force's possession, and, in some cases, requiring that the Task Force itself identify discoverable evidence, *before* Respondents had the opportunity to marshal and apprise the Court of critical facts that bear on the questions of whether, to what extent, and in what manner discovery of information possessed by the Task Force should be allowed.  Resp'ts' Mem. at 3-4.  These circumstances include the manner in which the Task Force must be permitted to conduct its business in order to achieve the national security and foreign policy objectives of the President's Executive Order, the time and resources required to search for, clear, and produce highly classified information from the estimated 1.8 million pages of materials currently contained in the TF Network database, and the various reasons why exhaustive searches of the TF Network database would be unjustified by an expectation of significantly enhancing the body of material information that has already been made available to Petitioners from the files compiled by OARDEC and the JIG.  Resp'ts' Mem. at 8-12.

Thus, the Court's orders on Task Force discovery were rendered beyond the usual adversarial presentation of the issues, and therefore, unavoidably, without apprehension of the consequences that are only now apparent in light of facts, which, being previously unavailable to the Court, *see Zeigler*, 555 F. Supp. 2d at 129, should now inform its consideration of the issue. *See Casanova v. Marathon Corp.*, 246 F.R.D. 376, 378 (D.D.C. 2007) ("[w]hen presented with a motion for reconsideration, the court must consider the entire record before it at that time"). The "harm [that] would flow from a denial of reconsideration," to the timely completion of the Task Force's important mission, to the vigorous performance of intelligence agencies' critical national security functions, and to the shared interest of the Court and the parties in an early and efficient resolution of these cases, warrants both reconsideration and withdrawal of those orders. *Hamilton,* 2009 WL 1385339, *3.

> E.    **The Important Questions Raised by Requests for Discovery of Task Force Information Call for a Coordinated Response.**

Finding no ground on which to take genuine issue with the premises of Respondents' motion, or their global approach to the issue of Task Force discovery, Petitioners offer the Court no alternative of substance. Instead, they simply insist that the issues raised by Respondents' motion "are best resolved by the Merits Judge as they arise . . . in the individual Petitioners' cases." Pet'rs' Mem. at 22. They champion this proposal, moreover, without regard for the decision the Court has evidently made already to consolidate its consideration of Respondents' motion, at least as an initial matter, before Judge Hogan. *See In re:  Guantanamo Bay Detainee Litigation*, Misc. No. 08-0442, Minute Order dated May 20, 2009 (directing Petitioners to file a

consolidated opposition to Respondents' motion).  Petitioners offer no convincing reason why the Court should change its approach.

According to Petitioners, the Court's existing orders represent the superior approach to the question of Task Force discovery, because they reflect "individual tailoring" to the "circumstances of particular cases" and to their "individual nuances."  Pet'rs' Mem. at 22-24. Yet Petitioners fail to explain how this was or even could have been so, given what was known (or, more precisely, unknown) to the Court at the time these orders issued.   The orders that Petitioners cite as exemplary of the "tailored" approach they favor, *see id.* at 24 nn.15-19, do not allude to the particular circumstances in those cases that warranted comprehensive discovery of information possessed by the Task Force.  They do not assess individual Petitioners' need for such information, nor do they balance that need against the time and resources necessary to produce it, the relatively modest expectation that such efforts will reveal new information of a material nature, or the costs that such efforts will impose on both the nation's intelligence agencies and the Task Force created to assist the President in the discharge of his discretionary Article II powers.

The nature of these orders is perfectly understandable, considering that, at the time these and similar orders were rendered, the Members of the Court were unaware of the magnitude of the Task Force's principal database, the time and resources required to conduct searches and produce discoverable information contained within that database, the likely cumulative and duplicative nature, in principal part, most of the information the Task Force possesses, and the ramifications of making the Task Force itself responsible for identifying exculpatory evidence and other discoverable information for purposes of these *habeas* cases.  Tellingly, however, even

14

though these considerations can now be assessed, Petitioners give no indication as to how they would hereafter be taken into account "in the specific factual context" of individual cases, so as to "achieve[ ] a better balance of efficiency and justice," Pet'rs' Mem. at 25, should Respondents' request for reconsideration of these orders be denied.[7/]

Far from qualifying as the superior proposal, the disjointed approach that Petitioners advocate suffers from a number of decisive shortcomings.  First, Respondents have already crafted a proposal for discovery of Task Force information that will allow these cases to proceed expeditiously toward decision on the merits, while allowing individual Petitioners the flexibility to obtain discoverable information on which the Review Panel itself has based its decisions regarding Petitioners' transfer, release, or other appropriate disposition.  Resp'ts' Mem. at 14-17. Whereas adoption of  Respondents' proposal will resolve the issue fairly, and resolve it now, Petitioners wish to kick the can down the road, leading to further delays and unnecessary expenditures of judicial, governmental, and private resources in order to litigate these issues again and again on a piecemeal basis.

As this multiplicitous litigation unfolds, Merits Judges may find it difficult to assess the impact of their individual decisions on the aggregate burden that Task Force discovery will impose on Respondents.  Given the inherent uncertainties of case-by-case adjudication,

---

[7/]  Petitioner Majid Khan has moved separately to request that Respondents' motion for reconsideration be heard in his case by the Merits Judge (Judge Walton).  Motion for Exception To Consolidation Orders and Memorandum in Opposition to Motion for Reconsideration, dated May 28, 2009; *see* Dkt. No. 1778, 08-mc-0442 (TFH).  The reasons given by petitioner Khan for his request (which Respondents dispute) are collateral to the grounds on which Respondents' motion for reconsideration rest.  Therefore, the merits of Respondents' motion should first be addressed by Judge Hogan, in accordance with the Court's May 20 Minute Order, and any collateral issues remaining thereafter addressed by Judge Walton.

Respondents may find it difficult to allocate their finite resources most efficiently to meet the obligations of producing Task Force information while carrying out their myriad other responsibilities in this litigation.  Both circumstances could encumber, and delay, Respondents' efforts to prepare these cases for hearings on the merits.  Respondents' consolidated proposal avoids all of these difficulties while striking a workable balance among the Petitioners' desire for access to Task Force information, the growing urgency to resolve these cases on their merits, and the imperative of safeguarding the Task Force from burdens of litigation that could interfere with its efforts, *inter alia,* to determine the appropriate disposition of the remaining detainees, whether by transfer, release, prosecution, or otherwise.

## II.      PETITIONERS' MOTION TO STRIKE SHOULD BE DENIED.

Unable to challenge the merits of Respondents' proposal for obtaining Task Force information, or to offer a meaningful counterproposal of their own, Petitioners resort to baseless procedural technicalities, and move to strike Respondents' motion for alleged disregard of the Court's prior orders, principles of comity, and the Local Rules.  Pet'rs' Mem. at 6-11. Petitioners' cross-motion is a distraction from the weighty questions presented by Respondents' motion for reconsideration and should be rejected.

Echoing their position that piecemeal litigation of these issues would be preferable to the consolidated approach that the Court itself has apparently chosen, Petitioners first maintain that Respondents' motion is procedurally improper because, in their view, it was filed in contravention of the Court's instruction "that any future motions to amend the Case Management Order be directed to the Merits Judges."  Pet'rs' Mem. at 6-7 (quoting Amended CMO at 4). They similarly assert that Respondents' motion offends principles of comity by asking "this

Court, in effect . . . [to] review[ ] and withdraw[ ] orders issued by peer District Court judges."
*Id.* at 7-8.

Both arguments are premised, however, on the erroneous notion that Respondents addressed their motion for reconsideration to Judge Hogan, alone, and requested that he (to use Petitioners' terminology) "supersede the functions of the Merits Judges." *Id.* As the Court's docket reflects, Respondents filed their motion before every Member of the Court in each of the pending Guantanamo *habeas* cases. Nowhere in their motion did Respondents purport to tell the Court how it should go about deciding their request for reconsideration, whether case-by-case, <u>en banc</u>, or by reference to a single judge. As discussed above, the Court evidently made the decision for itself to refer Respondents' motion, at least in the first instance, to Judge Hogan. The Court's own decision to consolidate its consideration of Respondents' motion provides no valid reason for condemning the motion itself as procedurally improper.

Petitioners' contention that Respondents also "disregarded" their meet-and-confer obligation under Local Rule 7(m), Pet'rs' Mem. at 9-11, is equally baseless.[8] This Court has recognized the inherent difficulty of "compliance with the commands of Rule 7[(m)]" in this litigation, given the sheer number of counsel involved in these approximately 150 *habeas* cases. *In re: Guantanamo Detainee Litigation*, 2008 WL 5275914, *1 (D.D.C. Dec. 17, 2008). That difficulty was most acute in this instance, where Respondents' motion for reconsideration was to be filed in every pending case. Compounding the difficulty still further was the fact that, despite several extensions of time that Respondents had already obtained to file their motion for

---

[8] The ensuing discussion, *infra* at 17-19, also addresses the issues raised in Petitioner's Motion to Strike, *Bostan v. Obama*, No. 05-883 (RBW) (Dkt. No. 197).

reconsideration, further inter-agency consultation at high levels was still necessary to complete Respondents' proposal for access to Task Force information as the filing deadline neared.  *See Alsawam v. Obama*, No. 05-1244 (CKK), Respondents' Third Motion for Extension of Time (Dkt. No. 162) at 2; *In re:  Guantanamo Bay Detainee Litigation,* Misc. No. 08-442 (TFH), Respondents' Motion for Reconsideration of Orders Regarding Discovery from the Guantanamo Review Task Force and Motion for Consolidated Order Regarding Task Force Discovery ("Resps.' Mot. Recon.") (Dkt. No. 1755) at 3 n.3.

Even though Respondents thus found themselves in a position where they could not confer meaningfully with Petitioners' counsel about the nature of the relief sought, as Rule 7(m) contemplates, *cf. Alexander v. FBI*, 186 F.R.D. 197, 199 (D.D.C. 1999), or as a practical matter to seek further extensions of time, they did not simply "disregard" the Rule's requirements, or unilaterally determine that compliance with the Rule was unnecessary, as Petitioners assert. Pet'rs' Mem. at 9-10.  Rather, Respondents expressly requested the Court's *leave* to pursue, and in fact followed, an alternative procedure for achieving Rule 7(m)'s objectives – specifically, conferring with Petitioner's counsel after filing their motion for reconsideration, and reporting to the Court within one week as to the results, while in the meantime tolling Petitioners' time to respond the motion.  Resps.' Mot. Recon. at 3 n.3; *In re:  Guantanamo Bay Detainee Litigation,* Misc. No. 08-442 (TFH), Respondents' Certification Pursuant to Local Rule 7(m) (Dkt. No. 1765).

In light of Respondents' efforts under the extraordinary circumstances of this filing, Petitioners' contention that Respondents' motion for reconsideration should be stricken for disregard of Rule Rule 7(m) should be rejected.  *See Hager v. Bluefield Regional Med. Ctr., Inc.*,

18

170 F.R.D. 70, 75 n.4 (D.D.C. 1997) (addressing merits of motion to compel where movant "eventually conferred" with opposing party).  Respondents' motion raises substantial issues, implicating the Task Force's ability to carry out its mission within the time frame the President has found necessary to the national security and foreign policy interests of the United States; the "heavy costs" that Task Force discovery could exact upon national security agencies, in terms of the "expenditure of valuable time and resources that might otherwise be directed to the proper execution of the[ir] work" combating terrorism, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004); and the common objective of the Court and the parties to resolve these cases in as just and expeditious a manner as practicable.  The global approach that Respondents have advanced presents a ready vehicle for obtaining information from the Task Force while vindicating all of these interests.  Respondents' motion for reconsideration should therefore be decided on its merits – and granted – without further unnecessary and fruitless delays that striking the motion would entail.  *Niedermeier v. Office of Sen. Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (Hogan, J.) (denying motion to strike for failure to observe requirements of Rule 7(m) "[g]iven the general judicial preference for resolving motions on their merits rather than dismissing them on technicalities").

## CONCLUSION

For the reasons stated above, and in Respondents' initial memorandum,  Respondents' request for reconsideration of the Court's orders regarding Task Force discovery, and for a consolidated order regarding Task Force discovery, should be granted.  Petitioners' cross-motion to strike should be denied.

Dated:   June 5, 2009                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         JOSEPH H. HUNT (D.C. Bar No. 431134)
                                         Director, Federal Programs Branch

                                         */s/ Terry M. Henry*
                                         TERRY M. HENRY
                                         Assistant Director, Federal Programs Branch

                                         */s/ James J. Gilligan*
                                         JAMES J. GILLIGAN
                                         Assistant Director, Federal Programs Branch

                                         /s/ *Luke M. Jones*
                                         LUKE M. JONES
                                         Trial Attorney
                                         Civil Division
                                         United States Department of Justice
                                         P.O. Box 883, Washington, DC 20044
                                         Phone: (202) 305-0037
                                         Fax:  (202) 616-8470

                                         *Attorneys for Respondents*